391 P.2d 575

The ATCHISON, TOPEKA AND SANTA FE
RAILWAY COMPANY, a corpo-
ration, Appellant,

v.

Gene PARR and Irine Parr, husband
and wife, Appellees.

No. 7019.

Supreme Court of Arizona,

In Division.

April 15, 1964.

Rehearing Denied May 19, 1964.

Fennemore, Craig, Allen & McClennen, Phoenix, for appellant.

Udall & Udall, Tucson, Stevenson & Babbitt, Flagstaff, for appellees.

LOCKWOOD, Vice Chief Justice.

Gene Parr brought this action against the Atchison, Topeka and Santa Fe Railway (hereafter referred to as the Santa Fe) and against its employee Douglas Wamble. Parr claims he suffered personal injuries as a result of the negligence of the Santa Fe or its employee Wamble, or both. The trial below resulted in a verdict and judgment in favor of Wamble and against Parr, but in favor of Parr and against the Santa Fe. Santa Fe appealed.

·The facts are as follows: Parr, an employee of the Owl Truck and Contractors Cargo Service, suffered an injury at the

Santa Fe's Glen Canyon Dam railhead, east of Flagstaff. The immediate cause of this injury was a fall from a truck. The accident occurred while Parr and other employees of Owl Truck and defendant Wamble were engaging in unloading pipe from a gondola railroad car onto the Owl Truck operated by Parr. This operation was under the supervision of Richard Stindt, the Owl Company's foreman. The pipe, which was forty feet in length and twenty inches in diameter, was moved by an electric gantry crane owned by Santa Fe and operated by Wamble. The gantry crane ran on tracks which were parallel to and outside of the tracks on which the gondola car was spotted. It spanned the area where both gondolas and trucks were located for the load transfer.

The truck which was being loaded was parked immediately adjacent to and on the north side of the gondola. The mechanics of the operation were directed by the Owl foreman Stindt. Owl employees in the gondola car would attach cables connected to the crane swivel hook to four joints of pipe. On signal from the workers in the gondola, the crane operator would raise the lift of pipe out of the car and then move it laterally to the truck. If the Owl employee on the truck was not prepared to receive it, he would order the operator to stop the crane with the lift suspended between the truck and gondola car. A lift was so suspended immediately before the accident.

Plaintiff Parr was crouched near the northwest corner and on top of the pipe which had been loaded onto the truck. He was nailing down an angle iron to hold the pipe. His back was to the lift of the pipe. The west end of the lift swung or rotated against his causing him to jump or fall from the truck onto the ground. The fall resulted in a fractured left heel. Parr then instituted this action for damages and the case was tried to a jury which found for the defendant Wamble, but against the defendant Santa Fe in the amount of $15,000.

The Santa Fe moved for a new trial. Parr moved for a new trial against Wamble. These motions were not ruled upon and were therefore denied by operation of law. Parr also moved for new trial against Santa Fe on the issue of damages only or alternatively for an additur of $15,000. The trial court made a minute order adding $15,000 to the verdict and ordering a new trial on the issue of damages against Santa Fe if it refused to consent to the additur. Santa Fe expressly refused to consent to this additur and the trial court's order for new trial became effective.

Parr did not appeal the verdict or judgment against him and in favor of Wamble. Accordingly, this judgment has become final and Wamble's freedom from negligence has become res judicata. Santa Fe is the only appellant

Santa Fe first contends that the verdict against it is inconsistent with the verdict in favor of Wamble because there is no basis whatever for a finding that Santa Fe is liable except vicariously through its employee, Wamble. Santa Fe concedes that the verdict against it is consistent with the verdict for Wamble only if there is evidence in the record of its independent negligence. Therefore, we now examine the evidence and the fair inferences which may be drawn from it.

■■ When reviewing the sufficiency of evidence to support a verdict and judgment, this Court will view the evidence in the light most favorable to the appellee. Consequently, in the instant case, we will give Parr the benefit of every favorable item of evidence and the favorable inferences which may be drawn therefrom. Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201 (1949).

The evidence makes it clear that this giant crane was equipped with a cab from which the operator could properly control the lifting hook and at the same time look at the most important area of work (that where Parr was standing on the truck doing the loading) only by "hanging half-way out of the cab." In addition to the restricted visibility of the cab, the record shows that the crane was lifting an unwieldy forty-foot load of 4800 pounds in a high wind on a swivel hook which was so arranged that it could suddenly swing in any

direction at any time. Wamble's testimony demonstrates why the jury could have found that he did all a reasonable man could have done under the circumstances of his employment. But it also shows why the same jury could find that Wamble's employer was negligent in putting him and Parr in such a situation:

"Q. Have you ever received a hand signal from anyone, whether the truck was loaded or empty, standing in that area of the truck: either the northwest corner or the northeast corner?

"A. No sir.

"Q. Why?

"A. You can't see them.

"Q. Can you operate the crane when you are leaning out of the window?

"A. Not very readily, no sir.

"Q. Why?

"A. Well, you are in a cramped position. It would be like leaning over a desk.

"Q. What activates this whole crane?

"A. The dead-man switch.

"Q. What is that? Tell the jury. Explain to them what that is.

"A. Well, that is a switch you have to have your foot on at all times so that you can have the power that goes

through it. And as soon as you take your foot off of it, everything immediately stops. I guess that's where the expression comes from, "dead-man." If you fall off it, everything stops. All railroad equipment, I guess all kinds of equipment have them.

"Q. Mr. Wamble, with respect to the dead-man switch, does it affect your use of or your ability to keep on the dead-man switch, to project yourself halfway out the window or lean out the window?

"A. Yes, your right foot's on it. You have to strain to leave your foot on the dead-man switch and lean out the window at the same time."

■ If the Santa Fe furnished equipment which permitted only limited vision to the operator thereof, so that he could not see the area where a dangerous condition might easily arise, then the jury could consider this as evidence of independent negligence on the part of the Santa Fe. There are many cases holding a motorist negligent where he has operated an automobile with its windshield obscured or covered by dust, frost, snow, etc. For example, in Coe v. Hough, 42 Ariz. 293, 25 P.2d 547 (1933), the defendant was held negligent for continuing to drive his automobile in a dust storm so severe that objects could not be seen more than a few feet ahead. The

Court stated 42 Ariz. at 303–304, 25 P.2d at 550:

"If an autoist cannot see where he is going he should stop. If his vision is limited he should have such control of his car as to be able to stop within the radius of his vision. If he violates these reasonable and sane rules * *, he is, we think, guilty of legal negligence."

This principal applies to the instant case also. The jury could properly consider the restricted visibility of the crane's cab as evidence of independent negligence on the part of the Santa Fe.

■ Appellant argues, however, that visibility from the cab of the crane is "about as good" as that from most other cranes which witnesses at the trial below had seen at other places. Such testimony, while proper, cannot relieve Santa Fe from liability. Justice Holmes once rejected a similar contention in Texas & Pacific R. Co. v. Behymer, 189 U.S. 468 (1903) at 470, 23 S.Ct. 622 at 623, 47 L.Ed. 905:

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

See also, 2 Wigmore, Evidence (3rd Ed.) § 461 and Prosser on Torts (2nd Ed.), p.

135. Similarly, it is error to instruct a jury that compliance with custom or practice in a particular industry is conclusive evidence of due care. Buccafusco v. Public Service Elec. & Gas Co., 27 N.J. 74, 140 A.2d 79 (1958).

 Appellant also argues that a jury could not find the Santa Fe's use of this "restricted vision" cab to be negligence unless plaintiff had produced some kind of expert who would testify to such a conclusion. The trend in recent years has been to extend the use of expert testimony to any situation where the expert's opinion or special knowledge might aid the jury in getting at the truth. See MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211 (1958); Allied Van Lines v. Parsons, 80 Ariz. 88, 293 P.2d 430 (1956); State v. Romo, 66 Ariz. 174, 185 P.2d 757 (1947). But this trend and the cited decisions do not prevent jurors from using their own good judgment and from concluding that a particular practice or condition is unreasonably dangerous, just because there is an absence of expert opinion. Even in medical malpractice situations, an area where expert testimony is usually essential to a plaintiff's judgment, the rule is not absolute. As this Court stated in Boyce v. Brown, 51 Ariz. 416, at 421, 77 P.2d 455, at 457 (1938):

"The accepted rule is that negligence on the part of the physician or surgeon, by reason of his departure from the proper standard of practice, must be established by expert medical testimony, unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it."

In the instant case, a juror could conclude, without the benefit of expert testimony, that the Santa Fe negligently furnished equipment with restricted visibility.

 Santa Fe next charges the trial judge with reversible error in refusing to permit a trial amendment of the second amended answer to raise the defense of "loaned servant." We disagree. Since we have determined that the record contains evidence of independent negligence on the part of Santa Fe, the question whether Wamble was acting in behalf of Santa Fe or of Owl is irrelevant for the purposes of this appeal.

 Santa Fe also raised the question whether it was proper to instruct the jury on permanent loss of earnings. If there was no evidence from which reasonable men could infer that Parr's injuries might interfere with his earning capacity in the future, then the instruction was improper. Otherwise it was right.

The record reveals that Parr, age 44 at the trial, had spent the major part of his adult life driving heavy trucks. Dr. Alvin

L. Swenson, an orthopedic surgeon, testified for plaintiff. Since the Santa Fe admitted Dr. Swenson's qualifications and called no medical specialist, his opinions are unchallenged in the record. Dr. Swenson had performed a serious operation on Parr, the purpose of which was to "completely eliminate the movement of the subastragalar joint" of the ankle. But the operation was not successful in freezing the joint. Another operation had been recommended by Dr. Swenson, but had not been performed at the time of the trial. However, Dr. Swenson was of the opinion that even if the prospective operation were completely successful, there would be a "permanent disability and stiffness of the foot." This would result, according to the testimony of Dr. Swenson, in less endurance, a decrease in agility, poor balance and coordination, less ability to tolerate jumping on the foot, and loss of normal gait. A jury could reasonably find from such evidence that this kind of permanent injury would result in decreased earning power of Parr. See S. A. Gerrard Co. v. Couch, 43 Ariz. 57, 29 P.2d 151 (1934) and United Verde Copper Co. v. Wiley, 20 Ariz. 525, 183 P. 737 (1919).

Judgment affirmed with directions to grant plaintiff-appellees a new trial on the sole issue of damages.

STRUCKMEYER and BERNSTEIN, JJ., concur.