709 P.2d 533

Phyllis A. ROSSELL, Guardian ad litem of Julie Ann Kennon, a minor, Plaintiff-Appellee,

v.

VOLKSWAGEN OF AMERICA, a corporation; Volkswagenwerk, A.G., a corporation; Black Corporations I through V, Defendants-Appellants.

No. 1 CA–CIV 5589.

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 30, 1984.

Shernoff, Wild, Lipsky & Batchelor by Gary V. Wild, Claremont, Cal., Mallery, Stern & Wulford by Richard C. Mallery, Claremont, Cal., Peter G. Dunn, Phoenix, for appellee.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Philip E. von Ammon, Ruth V. McGregor and Nancy L. Rowen, Phoenix, for appellants.

## OPINION

EUBANK, Judge.

This is a negligent design of a 1958 Volkswagen battery system case. The battery system of the vehicle involves the battery, its location within the vehicle, the battery cover, and the battery restraint.

Following the trial, the jury returned its verdict in favor of appellee Julie Ann Kennon against appellant Volkswagen for $1,500,000. Volkswagen moved for a judgment notwithstanding the verdict, or, in the alternative, a new trial. Both motions were denied and Volkswagen has appealed to this court from the judgment and the denial of both motions.

The facts are that Phyllis Rossell, the mother and guardian ad litem of Julie Ann Kennon (11 months old at the time of the accident) was driving her own mother's 1958 Volkswagen Type I Sedan, known as a "Bug" or "Beetle", from Riviera, Arizona to Phoenix, on October 16, 1970. (The vehicle had been purchased approximately two months earlier as a used car and the motor had been replaced in 1968). Following a full day's work at Bechtel, Phyllis placed Julie in the right hand passenger seat and left her mobile home between 8:00 and 8:30 p.m. She stopped at Bullhead City for dinner and then continued her trip to Phoenix through Kingman then by State Route 93. At approximately 11:00 p.m., at a point north of Wikieup, on State Route 93, Phyllis either fell asleep or became unconscious and the vehicle drifted to the right off of the paved roadway. It hit a sign and the noise aroused Phyllis. In attempting to gain control of the vehicle, she rolled it over on the road. It then left the road and landed on its top in a wash. Phyllis and Julie remained in the vehicle for seven hours. During this period of time Phyllis was in both unconscious and conscious states. When she finally gained full consciousness, Phyllis exited the vehicle and removed Julie. She then obtained assistance from a passing motorist.

Julie was severely burned by battery acid as a result of the accident. During the years since, she has undergone extensive corrective surgery.

When Phyllis initially filed this case on behalf of Julie against Volkswagen, it was based on four theories of recovery: strict liability resulting from the design of the battery system, negligent design and placement of the battery, strict liability for the design of the heating system, and strict liability for the propensity of a Volkswagen to roll over. Prior to trial, the court granted Volkswagen partial summary judgment on the issue of strict liability as it pertains to the design placement of the car battery because "the substitution of the larger battery for the smaller battery designed for use in the subject vehicle was a substantial change in the condition in which the vehicle was sold." The partial summary judgment also preserved Julie's right to proceed on her theory of negligence regarding the design and placement of the smaller car battery, which allegedly and foreseeably could be changed by the consumer to a larger battery. When plaintiff rested her case, the trial judge granted Volkswagen's motions for directed verdict on the remaining strict liability theories relating to the rollover propensity and the design of the heater for the introduction of carbon monoxide into the passenger compartment. Thus, plaintiff's only remaining theory for recovery, when the case was submitted to the jury, was the alleged negligent design of the Volkswagen by locating the battery under the rear passenger seat. No cross-appeal was taken by Phyllis from the summary judgment or directed verdicts. On appeal Volkswagen raises three issues for our consideration.

I. SHOULD VOLKSWAGEN HAVE BEEN GRANTED A DIRECTED VERDICT, AND LATER A JUDGMENT N.O.V., ON THE ISSUE OF NEGLIGENT DESIGN BECAUSE APPELLEE

FAILED TO ESTABLISH A PRIMA FACIE CASE OF NEGLIGENCE?

II. IS VOLKSWAGEN ENTITLED TO A NEW TRIAL BECAUSE OF IRREGULARITIES IN THE PROCEEDINGS OF THE TRIAL COURT, AND BECAUSE THE TRIAL COURT'S ABUSES OF DISCRETION DEPRIVED VOLKSWAGEN OF A FAIR TRIAL?

III. IS VOLKSWAGEN ENTITLED TO A NEW TRIAL BECAUSE THE VERDICT IS NOT JUSTIFIED BY THE EVIDENCE AND IS CONTRARY TO THE LAW?

Taking the first issue, that appellee failed to establish a prima facie case of negligent design, Volkswagen contends, in part, that its motion for judgment N.O.V. should have been granted since appellee failed to establish a prima facie case of negligence because she failed to present any evidence as to Volkswagen's standard of care and its departure therefrom. It argues that appellee failed to produce expert witness testimony which would establish the standard of care of a motor vehicle manufacturer in 1958 [1] (and Volkwagen's deviation from that standard of care) and second, that plaintiff failed to show that the injuries which she suffered twelve years after the car was manufactured should have been foreseeable by Volkswagen.

We begin by considering the first question—did plaintiff establish through expert witness testimony the applicable standard of care owed by a motor vehicle manufacturer in 1958. The trial court instructed the jury on the standard as follows:

The standard of care of a manufacturer in designing a product is that of an expert in regard to the product he sells. A manufacturer is negligent if he fails to act as an ordinary careful manufacturer would act under the circumstances. Thus, if better testing or design was available and would have eliminated an unreasonable danger, the manufacturer is expected to have known and used that method as a matter of due care.

This instruction substantially complies with our opinion in *Brady v. Melody Homes Manufacturer*, 121 Ariz. 253, 589 P.2d 896 (App.1978).

The dispute between the parties concerns their respective contentions with regard to whether expert witness testimony is needed to establish the appropriate standard of care. Because the "standard of care of the manufacturer is that of an expert with regard to the product he sells," *Brady*, 121 Ariz. at 259, 589 P.2d at 902, Volkswagen contends that the appropriate standard of care in negligent design cases must always be proved through expert witness testimony. Plaintiff, on the other hand, contends that the necessity of establishing the standard of care through expert witness testimony is only applicable to cases involving professional negligence, such as medical malpractice. Both arguments in our opinion miss the mark.

The resolution of this question depends upon whether, without the benefit of expert witness testimony, a jury within its common understanding, *Atchison, Topeka and Santa Fe R.R. Co. v. Parr*, 96 Ariz. 13, 18, 391 P.2d 575, 578–79 (1964), could conclude that in the exercise of ordinary care, a safer design was feasible. In *Parr*, an employee was injured while moving pipe by a crane from a railroad car to a truck. The operator could not see out of the compartment while operating the crane. The court held that the jury could conclude, without the benefit of expert testimony, that the railroad was negligent in providing equipment with restricted visibility. Similarly, in *Brown v. Clark Equipment Co.*, 62 Hawaii 530, 618 P.2d 267 (1980), the court held that the question of whether a large blind spot hindering the vision of an operator of a 35-ton shovel loader could have been reduced or corrected by outside rear view mirrors, was sufficiently within the common understanding of a jury and

---

**1.** Volkswagen would refer us back to 1957 because the VW, although manufactured in 1958, was designed in 1957. Plaintiff has used 1958 throughout her brief. It is the year that the vehicle was manufactured.

that no expert witness testimony was required.

On the other hand, expert witness testimony was held to be essential in a case involving the alleged defective design of the braking system and interior design of a commercial bus. *McClellan v. Chicago Transit Auth.*, 34 Ill.App.3d 151, 340 N.E.2d 61 (1975). The feasibility of an elevator toe guard was found to be a technical matter and not within the jury's experience in *Westinghouse Electric Corp. v. Nutt*, 407 A.2d 606 (D.C.Ct.App.1979).

■ Thus, the determination of whether expert witness testimony is necessary to prove a manufacturer's negligence must be determined on a case-by-case basis depending on the circumstances involved. Therefore, neither of the broad contentions of the parties are correct. Applying the test set forth in *Parr*, we conclude that the issue of whether Volkswagen's placement of the battery inside the passenger compartment of the 1958 vehicle and the design of the tie-down system in 1957 violated the applicable standard of care is sufficiently a technical design matter that expert witness testimony is required. *See* Rule 702, Arizona Rules of Evidence; 3 J. Weinstein & M. Berger, Weinstein's Evidence para. 702 (1982).

Turning now to the question whether there is expert witness evidence of the manufacturer's design standard of care in 1958 in the record, we note that appellee maintains that such evidence was unnecessary. In appellee's brief she states:

> Thus, the standards exercised by the automobile industry in 1958 do not establish the standard of care required of a manufacturer in 1958. As indicated, it is some benefit to the fact finder, but in the end the fact finder must decide based upon common notions of prudence. Therefore, whether there is or there is not direct evidence of industry standards in 1958 is totally immaterial to a decision as to whether the 1958 Type I Sedan was negligently designed and created an unreasonable risk of harm.

■ We disagree. In *Brady v. Melody Homes Manufacturer*, 121 Ariz. 253, 589 P.2d 896 (App.1978) we attempted to draw the distinction between the proof necessary under a strict liability case theory and one based on a negligence theory. After discussing strict liability principles involving the manufacturer of a mobile home and the incorporation therein of pop-out windows, we held that the incorporation of smoke detectors was a negligence issue:

> We can say as a matter of law, however, that a reasonable consumer in 1964 would not have contemplated that a mobile home manufactured in 1964 would contain smoke detectors. This omission, in our opinion, does not fall within the definition of "defect" for strict liability purposes, and therefore must be judged upon negligence principles—the standard being that of a reasonably prudent manufacturer. In this context, Melody Homes' "state of the art" defense [4] is viable. *Maxted v. Pacific Car & Foundry Co.*, 527 P.2d 832 (Wyo.1974). (Footnote omitted).

121 Ariz. at 260, 589 P.2d at 903. Our supreme court in *Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 640 P.2d 851 (1982), in discussing the different proof required under a strict liability theory and a negligence theory allegation said:

> Appellant alleges that appellees were negligent. The pleadings are not specific, but presumably appellant contends that Winnebago and Chrysler were negligent in the design and/or manufacture of the motor home and Biddulph was negligent in repairing the motor home. "In Arizona, to successfully maintain an action for the tort of negligence, the plaintiff must show that the defendant had a duty to protect the plaintiff from the injury of which he complains, that defendant failed to perform that duty and that such failure proximately caused the plaintiff's injury." *Arizona Public Service Co. v. Brittain*, 107 Ariz. 278, 280, 486 P.2d 176, 178 (1971).
> In this instance Winnebago and Chrysler had a duty to design and manufacture

with due care so that the resulting product did not ignite without cause. Biddulph had a duty to perform repairs in a reasonably competent manner. The fire caused injury to appellant resulting in damages. Appellant, however, is unable to establish a prima facie case of negligence to get to the jury because of the lack of any concrete evidence of which party breached its duty. . . .

131 Ariz. at 293–94, 640 P.2d at 855–56. Thus, as the trial court instructed the jury, *supra*, the standard of care is that a manufacturer is negligent if it fails to act as an ordinary careful manufacturer would act under the circumstances. The circumstances here involve the design of the battery system in 1957 for the 1958 model Volkswagen. In order to establish the duty element of its negligence theory, appellee would have to provide expert witness testimony regarding the expert's opinion concerning the battery system design of ordinary careful manufacturers of automobiles in 1957. This was not done. Mr. McKibben, appellee's expert witness testified, that in his opinion the design of a vehicle which calls for the placement of a battery inside of the passenger compartment in the manner of this 1958 Volkswagen constituted an unreasonably dangerous condition. He did not testify regarding battery system design standards of automobile manufacturers in 1957. This lack of testimony is well illustrated by the following colloquy between the trial court and counsel at the post-trial motions hearing on January 29, 1980:

THE COURT: Let's assume that availability of the state of the art to have done it differently is not an issue and no testimony was needed. I think that Mrs. McGregor [attorney for Volkswagen] is saying, among several things, but that it's possible that someone could have been qualified and gotten on the stand, perhaps McKibben [appellee's expert witness] would have been permitted to give such testimony, I don't know. But I think she's saying that nobody said that it was a departure from the standard of care imposed upon reasonable automobile manufacturers in 1957 not to have placed the battery either in the forward compartment or the engine compartment. In other words, I think it's her position that that is lacking and it is essential. I think that McKibben said it is an unreasonably dangerous, and I'm not sure now whether it's condition or design, and I don't know whether it's significant, to have it where it is. That's simply his opinion coming from the stand without being asked whether that was something a designer knew or didn't know.

I think it's also sufficiently in the record that the manufacturer knew of the danger of caustic battery acid. There's no doubt about that. They knew that it was a dangerous substance and what it would do to an individual.

They—but unless I am mistaken, it is the absence of testimony saying from a—from a qualified expert as opposed to simply permitting the jury to infer it, that there was no expert testimony saying that the standard of care required of a prudent manufacturer would require that the battery be placed elsewhere. In other words, knowing that it was dangerous was not enough. But they—it also needs to be established that because of that, and because of all of the other aspects involved in designing a car, it was negligent or a departure from the appropriate standard of care not to have placed it outside of the passenger compartment. I don't know if that's exactly what she's saying. But assuming it is for the moment, maybe you could confirm, is that what you are saying?

MRS. McGREGOR: Yes. Your Honor, that's our position.

THE COURT: If that's her position, what do you state specifically in that regard, either that it did, that there is such testimony, or that it isn't necessary? I'm not sure.

MR. WILD [attorney for appellee]: Both. There is such testimony and it isn't necessary. That particular rule that Mrs. McGregor has enunciated I haven't heard of. I think it's a matter of

semantics. It is a matter of splitting hairs. You don't have to ask an expert in those precise words and get an answer to those precise words. When an expert testifies that there were alternate ways to design a vehicle and the manner in which it was designed constituted an unreasonably dangerous condition, the jury can answer the ultimate question of negligence at the time. And they did.

Now, the case that is referred to continuously by the defendant, the Larsen case, states:

"We do not agree that under the present state of the art an automobile manufacturer is under no duty to design an accident proof or foolproof vehicle or even one that floats on water. But such manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision. Collisions with or without fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable."

So that is Larsen's definition. They say their duty of care is weighed by looking at whether or not they have in fact created an unreasonable condition. *The expert in this case was not asked that specific question that Mrs. McGregor said we had to ask. It is absolutely unnecessary.* The totality of the evidence taken from Mr. McKibben, Mr. Severy, from Mr. Turnbow, from Mr. Albers all pointed out that they did not use due care and that this was unreasonably dangerous.

That, I believe, Your Honor, is the—with just one other point. Mrs. McGregor stated that Mr. McKibben stated very clearly that he did not know of the standards in 1958. He never stated that. At one point in time I did ask him about the—what he would have done in 1958, what he would have expected of the designers in 1958 as it related to the—to the retention system and the court sustained an objection on that as being without foundation and as being a leading question. And I tried to ask that two or three times as it related to the retention system.

But the fact of the matter is that is a matter of semantics and it is not appropriate. The jury can review the totality of the evidence as can the court. (Emphasis added).

■ We again disagree with appellee. The standard of care or state of the art can be established by expert testimony. Rules 702, 703, 704 and 705, Arizona Rules of Evidence. Here the questions were not asked, and this aspect of duty was not established by the evidence.

This brings us to Volkswagen's contention that appellee has also failed to prove foreseeability and proximate cause elements of negligence theory. In the *City of Scottsdale v. Kokaska*, 17 Ariz.App. 120, 495 P.2d 1327 (1972) we said:

We analyze the cases as saying that in the first instance foreseeability is always a question of law for the court. The court must determine the duty issue of whether an obligation is recognized by the law requiring the defendant to conform to a particular standard of conduct toward the plaintiff. This includes the question of whether the injury to the particular plaintiff was foreseeable. If it is not foreseeable then the trial judge usually disposes of the matter by dismissal, summary judgment, or the directed verdict route. If it is foreseeable and the duty is found by the trial court to exist, the trial court may or may not refer the foreseeability question to the jury by instruction on the issue of negligence. This issue is usually presented to the jury, as in *Tucker v. Collar, supra* [79 Ariz. 141, 285 P.2d 178 (1955)] where there is a *debatable question* whether the injury to plaintiff was within the foreseeable scope of the risk or whether defendant was required to recognize the risk or take precautions against it. *See,* Annot. 100 A.L.R.2d § 3(d), p. 942, *supra.*

17 Ariz.App. at 126, 495 P.2d at 1333. (Emphasis in original). Thus, in the first

instance the question of foreseeability is always part of the duty question and consequently a question of law for the court.

A brief review of the facts shows that the vehicle was a used 1958 model Volkswagen designed during the year 1957. The battery compartment was located under the right-rear passenger seat, and was designed to have a metal covering over the battery and a metal restraining strap holding it in place in its compartment under the seat. If in this case the appellee's injuries had resulted from acid leakage from a battery properly covered and restrained in accordance with the Volkswagen's design requirements, far different questions would be presented for disposition in both the trial court and on this appeal. Such was not the case. It is uncontradicted that the replacement battery which powered the vehicle involved in this litigation and from which battery acid allegedly leaked after the accident,[2] had been installed in 1970, that it was too large to allow the continued usage of the designed battery cover or the metal restraining strap, and in fact, as installed was completely unrestrained in any manner. Thus, the essence of the foreseeability issue presented by the facts in this case is:

Whether Volkswagen's design was negligent in that in 1957 Volkswagen should have foreseen that in 1970 a replacement battery might be installed in the vehicle of an improper size and configuration, and that in addition the installer would forego the use of the designed battery cover and metal restraining strap, leaving the replacement battery completely unrestrained.

■ Although there is some evidence in the record that other batteries are generally more available than the battery designed to fit in this vehicle's battery compartment, there was no evidence presented that in 1957 Volkswagen had any knowledge that six-volt batteries too large to fit the designed restraining system were even on the market. Additionally, and particularly pertinent to the proximate cause issues in this case, there is absolutely no evidence showing that a larger battery than intended by Volkswagen's design of the system was used because the proper size battery was in fact unavailable. Further, there was evidence introduced that the proper "19L" batteries were available for purchase in the 1970 market.

■ Much testimony was presented by appellee's witnesses in this case concerning the alleged tendency of metal restraining straps to corrode and of metal covers to "short-circuit." However, the record fails to provide a foundation of materiality as to these alleged defects, since there was no showing that, *in this car*, the metal restraining strap corroded and became useless or that the metal cover for the battery ever caused a short-circuit. The record does not show that the battery cover was discarded because the appellee's mother or her mother could not find a battery to fit under it. In short, no showing was ever made that, in this car, the battery restraining system was corroded or at all unusable.

In summary, the record is devoid of any evidence upon which liability could be imposed upon Volkswagen on the remaining negligence theory, after the trial court had granted directed verdicts for Volkswagen on the alleged roll-over tendency and carbon monoxide design defect theories. We hold as a matter of law, under applicable foreseeability principles, that the judgment entered by the trial court must be reversed and judgment entered for Volkswagen. We therefore answer Volkswagen's first question in the affirmative. The trial court erred in not granting Volkswagen's motion for judgment notwithstanding the verdict.

The judgment is reversed and this matter is remanded to the trial court with instructions to enter judgment in favor of Volkswagen.

HAIRE, J., concurs.

---

**2.** There was some evidence indicating that an additional battery was located on the back floor of the vehicle at the time of the accident.

MEYERSON, Judge, dissenting:

This is a complicated and difficult case. This action arose from a very unfortunate one-car accident which resulted in the tragic disfigurement of Julie Ann Kennon. Regrettably, it has taken the judicial system over six years from the filing of the complaint in this matter to reach an appellate decision. The litigants are entitled to know that the delay in this court has resulted in large part from the fact that the dissenting judge originally drafted what began as the majority opinion. After carefully reviewing the record and considering the multitude of errors raised by Volkswagen, this judge concluded that the judgment below should be affirmed. My colleagues have disagreed and I now must respectfully dissent from their decision.

The majority first concludes that the plaintiff failed to submit expert witness testimony concerning "battery system design standards of automobile manufacturers in 1957." I agree with the majority that under the facts of this case negligence must be proven through expert witness testimony. I disagree with their conclusion that no evidence of negligence was presented. Viewing the evidence most favorably to sustain the verdict, *Venerias v. Johnson*, 127 Ariz. 496, 499, 622 P.2d 55, 58 (App.1980), I cannot conclude that "there is no evidence introduced that would justify a reasonable person returning a verdict" for the plaintiff. *Rocky Mountain Fire & Casualty Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 291, 640 P.2d 851, 853 (1982).

Preliminarily, the majority's conclusion that plaintiff was required to present testimony concerning automobile industry standards is plainly incorrect. The majority offers no authority whatsoever for the proposition that the plaintiff in a negligent design case must establish as an essential element of her case the deviation by the defendant from the general standards of the class of manufacturers in question. In effect, the majority holds that the ordinary custom and practice of a business or industry is the sole criterion as to what the alleged tortfeasor should have done.

"Such an arbitrary rule [has] proved in the long run impossible to justify." W. Prosser, *The Law of Torts* § 33 at 167 (4th ed. 1971). Prosser has succinctly summarized the failures in the approach taken by the majority. *See generally id.* § 33. Although some industry practices are the result of "careful thought and decision ... others arise from the kind of inadvertence, carelessness, indifference, cost-paring and corner-cutting that normally is associated with negligence." *Id.* § 33 at 167.

> Even an entire industry, by adopting such careless methods to save time, effort or money, cannot be permitted to set its own uncontrolled standard.

*Id.* Thus, the plaintiff herein was not duty bound to present evidence of automobile industry practices in 1957.

This principle has been adopted in Arizona as exemplified by the flip-side of this issue. Our supreme court has held that the defendant's testimony that it has met general industry standards is not alone sufficient to relieve it from liability. In *Atchison, T. & S.F. Ry. Co. v. Parr*, 96 Ariz. 13, 391 P.2d 575 (1964), an employee was injured while moving pipe by a crane from a railway car to a truck. The operator could not see out of the compartment while operating the crane. The railroad company argued that the testimony demonstrated that the visibility from the cab of the crane was "about as good" as that for most other cranes. *Id.* at 17, 391 P.2d at 578. The court expressly held that such testimony, although admissible, could not relieve the railroad from liability. The failing of the majority's reasoning has been expressed concisely by Justice Holmes:

> What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.

*Texas & Pac. Ry. Co. v. Behymer*, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905, 906 (1903).

The proper way to frame the plaintiff's burden in this negligent design case is whether the expert witness testimony of-

fered by the plaintiff established that the placement of the battery (or design of its tie-down system) in the passenger compartment created an unreasonable risk of injury in the event of an accident, in light of information known by automobile manufacturers in 1957. Stated another way, whether in 1957, in the exercise of ordinary care, a safer design was feasible. Viewed in this light, there was ample expert witness testimony from which the jury could have concluded that Volkswagen was negligent in the placement of the battery in the passenger compartment.

Plaintiff's expert Jon S. McKibben testified that in 1957 automobile manufacturers were aware of the composition of batteries and knew that battery acid could cause serious injuries. He testified that at the time this' particular Volkswagen was designed, an alternative design was feasible with regard to the placement of the battery. Indeed, he testified that in most vehicles driven in the United States the battery is located in the engine compartment or luggage compartment. He further testified that the placement of the battery in the passenger compartment posed safety hazards. Finally, he testified that Volkswagen knew in 1957 that most batteries have a life expectancy of two years and the plaintiff's car "probably came with the battery size and battery size cover which was almost impossible to fit ... in the United States or into which it was almost impossible to fit an available battery size." In my view, there is sufficient testimony from which the trier of fact could have concluded that Volkswagen was negligent in the placement of the battery inside the passenger compartment.

As its second basis for reversal, the majority concludes as a matter of law that Volkswagen owed no duty to the plaintiff because it was not foreseeable twelve years after the car's manufacture, that a replacement battery of an improper size might be installed. It is only "where reasonable minds cannot differ" that a directed verdict on the issue of foreseeability is proper. *Arizona Pub. Serv. Co. v. Brittain*, 107 Ariz. 278, 281, 486 P.2d 176, 179

(1971). "[A] broad view must be taken of the class of risks and victims that are foreseeable." *McFarlin v. Hall*, 127 Ariz. 220, 222, 619 P.2d 729, 731 (1980). "It is not necessary that the exact manner in which the accident occurred could not have been foreseen if the injured person is within the foreseeable range of the negligent conduct and the injury results from a recognizable risk." *Schnyder v. Empire Metals, Inc.*, 136 Ariz. 428, 430, 666 P.2d 528, 530 (App. 1983).

As the factual basis for its conclusion, the majority states that there was no evidence that in 1957 Volkswagen had any knowledge that 6-volt batteries which were too large to fit the design restraining system were even on the market. There was testimony, however, that Volkswagen replacement directives for the battery indicated one of a different size and configuration. The replacement battery called for was a battery which would not be held down properly by the restraining system. The majority further points out that there was no evidence showing that an oversized battery was used because the proper size battery was unavailable. The majority is correct that there was evidence that a proper-sized battery was available for purchase. But other testimony indicated the limited availability of the proper battery.

The majority's application of foreseeability principles is much too rigid and mechanical. In my view, the essential facts demonstrate that the plaintiff was within the scope of danger created by Volkswagen's conduct and that a reasonable person would be able to foresee a risk of harm to someone in the plaintiff's position. Of course, "collisions with or without fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable." *Larsen v. General Motors Corp.*, 391 F.2d 495, 502 (8th Cir.1968). Volkswagen placed the original battery in the passenger compartment with knowledge that its recommended replacement unit was too large to fit securely under the restraining system, and with the further knowl-

edge that batteries must be replaced periodically. I cannot conclude that a reasonable person would not be able to foresee a risk of harm to someone in Julie Kennon's position.

Implicit in the majority's analysis is the suggestion that the act of the mechanic in replacing the battery with one which was too large to fit under the restraining system was an intervening and superseding cause of the injuries. Indeed this was the argument expressly raised by Volkswagen. But only unforeseeable intervening acts rise to the level of a superseding cause of an injury. *Hemet Dodge v. Gryder,* 23 Ariz.App. 523, 528–29, 534 P.2d 454, 459–60 (1975). "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such act ... does not prevent the actor from being liable for harm caused thereby." *Parness v. City of Tempe,* 123 Ariz. 460, 464, 600 P.2d 764, 768 (App.1979) (quoting from *Restatement (Second) of Torts* § 449 (1965)). For example, we have held that the installer of an incorrect radiator cap should have foreseen that the driver of the vehicle might try to remove the cap in the presence of others. *Hemet Dodge v. Gryder.* A burglar alarm company which left a key to the alarm system where an unauthorized person could obtain access to the controls and deactivate it, was held to be responsible for a burglary which was found to be foreseeable. *Central Alarm of Tucson v. Ganem,* 116 Ariz. 74, 567 P.2d 1203 (App.1977).

Thus, I conclude that the act of the garage mechanic substituting an oversize battery in the vehicle was not a superseding cause which should relieve Volkswagen from liability in this case. Because of the limited availability of properly-sized batteries and the necessity of periodic replacement of batteries, the mechanic's actions were foreseeable and therefore not a superseding cause of Julie Kennon's injuries.

For the foregoing reasons, I respectfully dissent from the majority decision.