506 P.2d 287

**Edna M. FALCHER, now known as Edna M. Falcher Gent, Appellant,**

v.

**ST. LUKE'S HOSPITAL MEDICAL CENTER, an Arizona corporation, Patty J. Ryan, M.D., and Sue Mulvihill, Appellees.**

**No. 1 CA–CIV 1760.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 20, 1973.

Rehearing Denied March 19, 1973.

Review Denied April 17, 1973.

---

Barry Allen Reiss, Sheldon Mitchell, Phoenix, for appellant.

Moore, Romley, Robbins & Green by Craig R. Kepner, Phoenix, for appellees St. Luke's Hospital and Mulvihill.

Renaud, Cook, Miller & Cordova, P. A. by John H. Seidel, Phoenix, for appellee Ryan.

EUBANK, Presiding Judge.

The main issue raised on appeal by this medical malpractice case is whether the trial court erred in refusing to instruct the jury on the doctrine of *res ipsa loquitur*.

The plaintiff-appellant Edna M. Falcher, hereafter "plaintiff", filed a medical malpractice action against appellees St. Luke's Hospital Medical Center, hereafter "Hospital", Patty J. Ryan, M. D., hereafter "Dr. Ryan", and Sue Mulvihill, hereafter "Nurse". This appeal is from an order of the trial court granting Dr. Ryan a directed verdict at the close of plaintiff's case, from the jury verdict and judgment in favor of the Hospital and Nurse, and from the denial of plaintiff's motion for a new trial.

The facts are as follows: At 6:00 A.M. on April 28, 1969, plaintiff arrived by ambulance at the Emergency Room of St. Luke's Hospital in a state of mental disorientation. She was extremely restless, incoherent, tremulous, and was hyperventilating. Dr. Ryan and Nurse were on duty at the Emergency Room and they were informed by plaintiff's husband that he had been awakened sometime earlier that morning to find his wife gasping for breath, incoherent and unresponsive. Plaintiff was placed on a hospital cart in one of the examining rooms and checked by Dr. Ryan who made a preliminary diagnosis of hyperventilation syndrome; however, the doctor was unable to determine the exact cause of plaintiff's condition. An orderly was summoned to attend plaintiff and a tranquilizing medication was administered.

At approximately 7:15 A.M. Nurse gave the orderly permission to leave the emergency room without first receiving authorization from, or notifying, Dr. Ryan. The doctor again saw plaintiff briefly at 7:20 A.M. and testified that at that time the patient was much improved, having regained coherency sufficiently to complain of nausea and heartburn, which occasioned her to prescribe Maalox. At this time the patient no longer appeared restless. Dr. Ryan also noticed that the orderly was no longer in the examining room with the patient. She stated that she did not know that he had been dismissed, but that in her professional judgment the patient was not, as of that time, in need of restraint or constant attendance.

Several minutes later Nurse returned to plaintiff's bedside with the cup of Maalox which Dr. Ryan had ordered. She found plaintiff sitting up in the hospital cart, staring straight ahead, and verbally unresponsive. Nurse was unable to lay the plaintiff back down on the cart so she left her alone in the examining room and went into the admitting area, some twelve feet distant, to summon the doctor. At that moment Dr. Ryan was on the telephone. While the nurse waited for the conversation to be completed, a sound was heard from the examining room. Both the Doctor and Nurse immediately returned to the examining room and found that plaintiff had fallen from the hospital cart and was lying on the floor, face down, bleeding freely from her head. It was determined that as a result of her fall, plaintiff had sustained a broken clavical, laceration of her scalp and abrasions and contusions about her body. It was the act of leaving the plaintiff unattended, without restraints and the subsequent fall which forms the basis of plaintiff's malpractice action.

Dr. Ryan admitted that she had not, at the time plaintiff fell, made a diagnosis of

the cause of plaintiff's initial illness and that, had the orderly still been in the room when she fell he might have prevented some of her injuries. She also testified that the emergency room was not crowded that morning, and additional assistance was available as needed.

Dr. Frederick C. Scott, a private practitioner familiar with local emergency room standards and practices, testified that the Nurse's action in leaving the patient unattended while she went a short distance for the doctor did not fall below the standard of care within the community, because there "was no immediate danger" to the patient and she was not a "threat to herself". He also concurred in Dr. Ryan's testimony that the decision to restrain a patient is "one of the medical judgments and one decision that is made by a physician". Dr. Scott did state, however, that in his expert opinion the Nurse's action in dismissing the orderly without the Doctor's permission or knowledge did not conform to the standard of practice in the medical community.

█ As a preliminary matter, the plaintiff failed to observe the requirements of Rule 5(b)7, Rules of the Supreme Court, 17 A.R.S. relating to questions presented for review or Rule 5(b)10, Rules of the Supreme Court, 17 A.R.S., requiring that instructions complained of be set forth *in haec verba* in the appendix of the opening brief. Although this failure to comply with the rules permits us to decline to consider the issue raised, State v. Madden, 104 Ariz. 111, 449 P.2d 39 (1969); State v. Hill, 11 Ariz.App. 230, 463 P.2d 125 (1969), we note that the issues raised were clear and that the appellees had no trouble responding to the arguments raised. In addition, since we affirm the various orders and judgment, we can ascertain no disadvantage to the appellees in considering the merits of the case.

## RES IPSA LOQUITUR

Plaintiff argues that "the doctrine of *res ipsa loquitur* applies in a case where a semi-conscious, totally dependent plaintiff, while unattended and unobserved by any hospital employee or attending doctor, falls from a cart in the emergency room of the defendant hospital, thereby sustaining injuries."

█ We recently discussed the application of the *res ipsa loquitur* doctrine to medical malpractice cases and reviewed the applicable law in Faris v. Doctors Hospital, Inc., 18 Ariz.App. 264, 501 P.2d 440 (1972) and we do not deem it necessary to repeat that analysis here. Suffice it to say that initially the doctrine will be applied only when it is a matter of common knowledge among laymen or medical men, or both, that the injury would not ordinarily have occurred if due care had been exercised. Faris v. Doctors Hospital, Inc., supra; Dow v. Kaiser Foundation, 12 Cal. App.3d 488, 90 Cal.Rptr. 747 (1970); Salgo v. Leland Stanford Jr. University Board of Trustees, 154 Cal.App.2d 560, 317 P.2d 170 (1957).

█ The mere fact that an occurrence is rare does not automatically lead to the conclusion that it was more likely than not caused by someone's negligence. Nieman v. Jacobs, 87 Ariz. 44, 347 P.2d 702 (1959); Silverson v. Weber, 57 Cal.2d 834, 22 Cal.Rptr. 337, 372 P.2d 97 (1962). In the instant case no witness, medical or lay, testified that the admittedly unusual event of a patient falling off a hospital cart is more probably than not the result of negligence.

█ Further, the circumstance that the patient is unconscious at the time of the accident, while it may bear on the fourth requirement for the application of *res ipsa loquitur* as enumerated in Capps v. American Airlines, Inc., 81 Ariz. 232, 303 P.2d 717 (1956) [1] does not always dictate application

1. ". . . (1) the accident must be of a kind which ordinarily does not occur in the absence of some one's negligence;

(2) it must be caused by an agency or instrumentality within the exclusive control of defendant;

of the doctrine. *See* Faris v. Doctors Hospital, Inc., supra. To infer negligence in every case in which an injured patient is under anesthetic or otherwise unconscious would place an impossible burden on the medical profession. Salgo v. Leland Stanford Jr. University Board of Trustees, supra.

The narrow question of a patient falling from a hospital bed has not previously been before our Court, but the California appellate courts have repeatedly addressed themselves to that circumstance. In reviewing jury instructions on *res ipsa loquitur* and the common knowledge of lay persons that such falls do not ordinarily occur in the absence of negligence, the California Court of Appeals summarized the law of that jurisdiction as follows:

> "It is concluded that the factual question of whether the patient's condition had changed to the extent that in the exercise of reasonable care the attending physician should have been notified was properly before the jury.
>
> "It was error to unqualifiedly give the instruction [on common knowledge] insofar as it suggests that negligence could be inferred because patients do not ordinarily fall from their beds. . . . (citation omitted) It was not error to permit the jurors to evaluate the general circumstances shown by the evidence, which includes the testimony of the doctor and nurses, in the light of the jurors' experience and reason." (Louie v. Chinese Hospital Ass'n, 249 Cal.App.2d 774, 791, 57 Cal.Rptr. 906, 917 (1967).

■ We agree with the California court. We cannot hold, as a matter of law, that in the common experience of laymen, patients do not ordinarily fall from hospital beds or carts absent a failure to exercise due care. Thus, the first prerequisite to invocation of the doctrine of *res ipsa loquitur* set out in Capps, supra, was

not met, and the trial judge properly refused to give the plaintiff's instruction.

It should be further noted, however, that the plaintiff was permitted to argue the elements of the *res ipsa loquitur* doctrine to the jury during final argument, and that the jury was permitted to consider all the circumstances surrounding plaintiff's fall on a straight negligence theory whether or not expert testimony had been offered on each of those circumstances.

■ Finally, the instruction, in the form presented, was defective because it lumped all of the parties together and made no allowance for the different relationship that each had to the instrumentality, i. e., the cart.

## DIRECTED VERDICT IN FAVOR OF DR. RYAN

■ Plaintiff argues on appeal that the jury should have been permitted to consider whether Dr. Ryan was liable for plaintiff's injury on the theory of respondeat superior. Since we have already held that *res ipsa loquitur* is inapplicable, and since the jury found the defendants Nurse and Hospital not liable, plaintiff's argument in this regard cannot stand. Certainly, if the agent is not liable, the principal cannot be liable under respondeat superior.

■ Considering the directed verdict as it related to Dr. Ryan's own alleged negligence, the Arizona courts have repeatedly held that in medical malpractice cases, where the lack of skill and care is not so apparent as to be within the common knowledge of laymen to understand and recognize it, expert testimony is required to establish the standard of care from which the defendant is accused of deviating. *See* Faris v. Doctors Hospital, Inc., supra. As was stated by our Supreme Court in Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455 (1938):

> " . . . In order to sustain a verdict for the plaintiffs in an action for

(3) it must not have been due to any voluntary action on the part of the plaintiff;
(4) plaintiff must not be in a position to show the particular circumstances

which caused the offending agency or instrumentality to operate to his injury. . . ." (emphasis omitted) (81 Ariz. at 234, 303 P.2d at 718).

malpractice, the standard of medical practice in the community must be shown by affirmative evidence, and, unless there is evidence of such a standard, a jury may not be permitted to speculate as to what the required standard is, or whether the defendant has departed therefrom. . . . The accepted rule is that negligence on the part of a physician or surgeon, by reason of his departure from the proper standard of practice, must be established by expert medical testimony, unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. . . ." (51 Ariz. at 421, 77 P.2d at 457).

■ In the case at bar, there was no testimony to the effect that Dr. Ryan's conduct deviated in any way from the standards of the medical community. Dr. Ryan testified that the decision to apply restraint or to summon additional attendants was a medical one which she made, in her opinion, properly. The only medical witness to testify in plaintiff's behalf was questioned solely regarding the condition which brought plaintiff to the hospital and the injuries she sustained in her fall. Dr. Scott, the defense expert witness, testified in response to a hypothetical question based on the facts herein, that "I probably would have managed the case very similar, if I had been there, as in this hypothetical situation".

Since there was no testimony whatsoever of any standard of care in the community different from that followed by Dr. Ryan, there was no issue of material fact for the jury to determine and the trial judge properly directed the verdict in Dr. Ryan's favor. ·'

## ADMISSION OF THE HOSPITAL CARTS INTO EVIDENCE

In regard to plaintiff's third argument on appeal, a standard hospital cart, with side rails running approximately one-half the distance of the sides, was produced in court on the first morning of trial in response to plaintiff's subpoena duces tecum which requested " . . . a hospital emergency room cart identical with the one on which . . . plaintiff was placed . . . and from which she fell". Following a discussion between the Nurse, Dr. Ryan and their counsel, it was agreed by them that the cart was not identical to the one plaintiff occupied the day of her fall. That the cart was then removed from the courthouse, and a second cart, with side rails running the full length of its bed, was produced as the one identical to that from which plaintiff fell.

Plaintiff sought to have both carts introduced into evidence to permit the jury to determine which cart was the one "identical with that from which appellant had fallen," and to challenge the credibility of the Nurse. The trial court denied that request and permitted only the second cart to be admitted into evidence, but permitted extensive cross-examination regarding the cart originally produced in answer to the subpoena.

■ The propriety of the admission or rejection of evidence at a trial lies within the sound discretion of the trial judge and this court will not disturb such evidentiary rulings absent a clear abuse of discretion. Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059 (1954); Han v. Horwitz, 2 Ariz.App. 245, 407 P.2d 786 (1965). The record shows that a proper foundation was laid for the admission into evidence of the second cart and not for the first cart. Udall, Arizona Law of Evidence, § 131, p. 272 (1960). Furthermore, we fail to see how a view of the carts by the jury could facilitate their determination of the credibility of the respective witnesses since the awkward circumstance of the first cart was amply impressed upon them by plaintiff. The jury was free to believe or disbelieve the testimony that the cart used by plaintiff had full side rails or half side rails. Under such circumstances, we hold that the trial court did not abuse its discretion in refusing to permit introduction of the first cart.

Judgment affirmed.

JACOBSON, C. J., Division 1, and HAIRE, J., concur.