Lori **CARDULLO**, a minor, By her parents and natural guardians, John Cardullo, et al.

v.

**GENERAL MOTORS CORPORATION.**

Civ. A. No. 71–114.

United States District Court,
E. D. Pennsylvania.

July 16, 1974.

Robert M. Ross, Philadelphia, Pa., for plaintiffs.

Peter P. Liebert, 3rd, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

This is a motion for new trial by plaintiffs.

This suit arose out of a one car accident which occurred on June 8, 1969 in which wife plaintiff (Lee Cardullo), the driver, and minor plaintiff (Lori Cardullo) sustained injuries. The case was tried on liability only, the parties having agreed on the amount of the verdict ($225,000) in the event of a finding for plaintiffs. The jury returned a verdict in favor of defendant.

It was plaintiffs' contention that defendant was liable under Restatement of Torts 2nd, § 402A, claiming that a defective ball joint had caused the right front wheel, backing plate, hub and steering knuckle to come off husband plaintiff's (John Cardullo) 1966 Corvair, causing the vehicle to veer off the road and to crash into a utility pole. Plaintiffs claimed also that defendant was guilty of negligence in design of the vehicle for failure to use a dual master cylinder brake system, rather than a single master cylinder brake system, contending that the dual master cylinder braking system would have prevented

complete brake failure after the right front wheel left the automobile.

The defense was, essentially, that (1) the right front wheel had separated from the vehicle as a *result* of the collision with the utility pole, rather than prior thereto, and (2) if any defective condition existed, it was due to substantial changes the vehicle had undergone subsequent to its manufacture. (The vehicle had been purchased used by John Cardullo when it had approximately 20,000 miles on the odometer.)

Plaintiffs advance three grounds for new trial.

■ 1. *The trial judge erred in charging the jury that the jury could draw an unfavorable inference from plaintiffs' failure to preserve the allegedly defective parts for trial.*

The accident happened on June 8, 1969. More than a month later, on July 10, 1969, John Cardullo signed a "Proof of Loss" claim form, enabling him to receive payment from his insurance carrier for the collision damage to his vehicle. As a result of the execution of the Proof of Loss, ownership of the damaged vehicle passed to Cardullo's insurance carrier. On July 14, 1969 plaintiffs' counsel made arrangements for an expert witness (Mr. Pruyn) to inspect the damaged parts. Plaintiffs' expert witness did so on July 16, 1969. Notwithstanding that counsel had been engaged and that a lawsuit was a distinct possibility, nothing was done by plaintiffs to preserve the vehicle, or any of its parts, for trial. Plaintiffs contend that since ownership of the damaged vehicle had passed from John Cardullo shortly after the accident, there is no showing that the evidence in question was under the control of plaintiffs at trial.

It was left to the jury to determine whether, under the foregoing circumstances, John Cardullo was justified in disposing of the damaged vehicle to collect insurance and had offered a satisfactory explanation for the failure to preserve material evidence. The jury was properly instructed that if the explanation offered was unsatisfactory, the jury was permitted, but not required, to draw the inference that the evidence would have been unfavorable to plaintiffs' claim.

■ 2. *The trial judge erred in permitting an unlisted witness to testify.*

Defendant called James Benjamin as a witness to testify concerning measurements of various distances at the accident scene. Mr. Benjamin was not listed as a witness in the pretrial memorandum of either party. Over the objection of plaintiffs' counsel, he was permitted to testify.

Local Rule 7(b) provides:

"Except for witnesses called on rebuttal or surrebuttal, a witness neither (1) named in any pre-trial memorandum or supplements thereto of any party, nor (2) authorized by the court in order to prevent manifest injustice, may not testify at the trial if timely objection is made by opposing counsel."

Plaintiffs assert that Benjamin's testimony came as a complete surprise to them and that they were unprepared to offer any rebuttal to his testimony.

Plaintiffs' argument is puzzling. All that Benjamin testified to was the distances he measured between various points at the accident scene. True enough, the evidence was damaging to plaintiffs' claim in that it raised serious questions as to the accuracy of the observations of the eyewitness who testified in plaintiffs' behalf. But if plaintiffs had desired to contest the accuracy of the measurements, they need only have made a request to the court for the opportunity to have their own measurements made. No such request was made. The failure to make the request is understandable since plaintiffs had already offered in evidence a large diagram of the scene of the accident, drawn to scale, from which many of the measurements could have been ascertained or, at least, approximated. There were also many photographs in evidence giv-

ing pictorial representations of relative distances.

The ruling permitting Benjamin to testify was well within the trial judge's discretion [1] and in accordance with the provisions of Local Rule 7(b). There was clearly no prejudice to plaintiffs in permitting testimony relating to physical measurements.

3. *The trial judge erred in refusing to submit to the jury plaintiffs' claim of negligent design.*

Plaintiffs contend that it is possible that the jury found that the wheel came off before impact, but that it came off due to a defect for which the defendant manufacturer was not liable under § 402A. In that case, plaintiffs argue that the jury should have been permitted to determine whether the collision with the pole could nevertheless have been avoided if the vehicle had been equipped with a dual, rather than a single, master cylinder braking system. Under a single cylinder system, a break anywhere along the lines, causing escape of the brake fluid, results in failure of braking power in all four wheels, whereas in a dual cylinder system, a single break in the lines will cause loss of braking power in either the front, or the rear, wheels, not in both sets of wheels. It is plaintiffs' contention that since the break in the system occurred at the point where the front wheel came off the vehicle, if the vehicle had been equipped with a dual cylinder system, the rear brakes would have retained braking power and the collision could have been avoided.

■ The question presented by the negligence count is whether General Motors acted as a reasonable and prudent automobile manufacturer in equipping its 1966 Corvair with the single cylinder braking system. Plaintiffs presented no expert evidence whatsoever as to the state of the art in the automobile industry at the time this vehicle was manufactured. The sole evidence presented by plaintiffs on this issue was that General Motors had, since 1962, equipped its Cadillac models with a dual cylinder braking system, and that American Motors had equipped some of its models with such a system in 1966. In the court's view, this fell far short of the nature and quantum of evidence required for a "negligent design" claim. (See colloquy T 492–497).

■ At trial plaintiffs' position was that since General Motors was aware of the dual cylinder system (as evidenced by the fact it had used such a system on its Cadillacs since 1962) at the time it manufactured this Corvair, it did not act as a reasonable and prudent manufacturer in failing to equip the 1966 Corvair with the dual cylinder system. In their brief in support of the motion for new trial, plaintiffs stated their position: "We do contend . . . that since defendant provided other more expensive vehicles with dual master cylinders, it had a legal obligation to equip plaintiff's car with a dual master cylinder." (Plaintiffs' Brief, p. 11). This misconceives defendant's obligation. A manufacturer of a motor vehicle is not under a duty to produce the very best vehicle possible, Evans v. General Motors Corp., 359 F.2d 822 (7th Cir. 1966); it has the duty to use reasonable care in the adoption of a safe plan or design. See Restatement of Torts 2d, § 398. The so-called "second accident" cases cited by plaintiffs, Passwaters v. General Motors Corp., 454 F.2d 1270 (8th Cir. 1972); Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968); Dyson v. General Motors Corp., 298 F.Supp. 1064 (E.D.Pa.1969), all recognized the foregoing standard as applicable. They considered only the question whether the manufacturer's duty included anticipation of certain dangers resulting from collisions; they did not deal with the quantum of proof required to establish negligence in design.

■ The question of safety of design of automobile braking systems is not a

1. See Ely v. Reading Company, 424 F.2d 758, 763 (3d Cir. 1970).

**894**

matter within the knowledge of ordinary laymen. It is a subject on which jurors require expert testimony for guidance. Reardon v. Meehan, 424 Pa. 460, 227 A. 2d 667 (1967). In this case it was incumbent on plaintiffs to present evidence as to the state of the art with respect to the design of braking systems for automobiles at the time this 1966 Corvair was designed and manufactured, and to establish that, in using the single cylinder braking system in the 1966 Corvair, defendant failed to use reasonable care to adopt a safe plan or design. This plaintiffs clearly failed to do.

Plaintiffs' motion for new trial will be denied.