709 P.2d 517

**Phyllis A. ROSSELL, Guardian ad litem of Julie Ann Kennon, a minor, Plaintiff-Appellee,**

v.

**VOLKSWAGEN OF AMERICA, a corporation; Volkswagenwerk A.G., a corporation; Black Corporations I through V, Defendants-Appellants.**

**No. 17778–PR.**

Supreme Court of Arizona, En Banc.

Oct. 28, 1985.

Reconsideration Denied Dec. 17, 1985.

Langerman, Begam, Lewis & Marks by Richard W. Langerman, Amy Langerman, Phoenix, Leonard Sacks, Encino, Cal., Shernoff & Levine by William M. Shernoff, Mallery, Stern & Warford by Richard C. Mallery, Claremont, Cal., Peter G. Dunn, Phoenix, for appellee.

Fennemore, Craig, von Ammon, Udall & Powers by Philip E. von Ammon, Ruth V. McGregor, Nancy L. Rowen, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Larry L. Smith, Phoenix, for amici curiae Motor Vehicle Manufacturers Association.

FELDMAN, Justice.

This is a product liability action brought by Phyllis A. Rossell, as guardian ad litem on behalf of her daughter, Julie Ann Kennon (plaintiff), against the manufacturer and the North American distributor of Volkswagen automobiles. The defendants will be referred to collectively as "Volkswagen." The case involves the design of the battery system in the model of the Volkswagen automobile popularly known as the "Beetle" or "Bug." The jury found for the plaintiff and awarded damages in the sum of $1,500,000. The court of appeals held that the plaintiff had failed to establish a prima facie case of either negligence or proximate cause and that the trial judge had erred in denying Volkswagen's motion for judgment n.o.v. (*Rossell v. Volkswagen of America*, 147 Ariz.App. 176, 709 P.2d 533 (1984).) Believing that the court of appeals had incorrectly stated the applicable law with respect to both

issues, we granted review. Rule 23, Ariz. R.Civ.App.P., 17A A.R.S. We have jurisdiction under Arizona Constitution art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS

We view the facts in the light most favorable to the party who prevailed at trial. *McFarlin v. Hall*, 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980). This action arises from a 1970, one-vehicle accident. At the time of the accident Julie, then eleven months old, was sleeping in the front passenger seat of a 1958 Volkswagen driven by her mother. At approximately 11:00 p.m., on State Route 93, Ms. Rossell fell asleep and the vehicle drifted to the right, off the paved roadway. The sound of the car hitting a sign awakened Rossell, and she attempted to correct the path of the car, but oversteered. The car flipped over, skidded off the road and landed on its roof at the bottom of a cement culvert. The force of the accident dislodged and fractured the battery which was located inside the passenger compartment. In the seven hours it took Rossell to regain full consciousness and then extract herself and her daughter from the car, the broken battery slowly dripped sulfuric acid on Julie. The acid severly burned her face, chest, arm, neck, part of her back and shoulder, and both hands. Since the accident Julie has undergone extensive corrective surgery but remains seriously disfigured and in need of additional surgery.

Plaintiff filed the complaint in May, 1978. She alleged four theories of recovery: negligent design of the battery system and strict liability for the defective design of the battery system, the heating system and for the propensity of the vehicle to roll over. Prior to trial, the court entered partial summary judgment for Volkswagen on the theory of strict liability for battery system design. This ruling was based on the replacement of the original battery with a larger battery which did not fit the designed restraints and which the court felt constituted "a substantial change in the condition in which the vehicle was sold." *See* Restatement (Second) of Torts 402A(b) (1965) (hereafter Restatement, § ____). The summary judgment order preserved the claim based on negligent design for placement of the battery. After the close of the plaintiff's case, the court granted a directed verdict on the issues involving heating system design and rollover propensity. Plaintiff has not taken a cross-appeal from these rulings. Thus, the case was submitted to the jury only on the question of Volkswagen's negligence in locating the battery inside the passenger compartment.

Plaintiff argued at trial that battery placement within the passenger compartment created an unreasonable risk of harm and that alternative designs were available and practicable. In their trial motions and later motion for judgment n.o.v., Volkswagen argued that plaintiff had failed to make a prima facie case. First, it claimed that in a negligent design case the defendant must comply with the standard of a reasonably prudent designer of automobiles and that

> knowledge of automobile design principles and engineering practices often is beyond the knowledge of laymen, [so that] plaintiff in a case such as this must produce expert testimony establishing the minimum standard of care and deviation therefrom in designing the automobile....

(Defendant's Supplemental Brief at 11.) Concluding its argument, Volkswagen pointed out that plaintiff produced no testimony

> expert or otherwise, [to] describe what was expected of [or done by] a reasonable automobile designer or manufacturer in 1958 or ... that defendants failed to meet [that] standard of care.

(*Id.* at 14.)

## DID PLAINTIFF MAKE A PRIMA FACIE CASE OF NEGLIGENCE?

*Legal Principles Applicable to a Negligent Design Case*

The trial judge characterized Volkswagen's position as a contention that plaintiff could not prevail in the

absence of testimony ... from a qualified expert as opposed to simply permitting the jury to infer it, ... that the standard of care required of a prudent manufacturer would require that the battery be placed elsewhere [or that] it was negligent ... not to have placed it outside of the passenger compartment.

(Transcript of January 29, 1980.)

The trial judge disagreed with Volkswagen and denied the motion for judgment n.o.v. However, a majority of the court of appeals held that such evidence was required for a prima facie case. That court held

[i]n order to establish the duty element of its negligence theory, [plaintiff] would have to provide expert witness testimony regarding the expert's opinion concerning the battery system design of ordinary careful manufacturers of automobiles in 1957. This was not done.

(Slip op. at 9.)

\*       \*       \*       \*       \*       \*

The ... state of the art can be established by expert testimony.... Here the questions were not asked, and this aspect of duty was not established by the evidence.

(*Id.* at 12.)

We do not agree with the views expressed by the court of appeals. First, the concept of "duty," mentioned twice by the court's majority, is irrelevant to the issues presented by this case. Duty, of course, is a necessary element in a negligence case. To satisfy that element, the court must find that the relation between plaintiff and defendant was such that it imposed upon the latter a legal obligation to use some degree of care for the protection of the former. *Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984), quoting W. Prosser & W. Keeton, THE

LAW OF TORTS § 53 at 356 (5th ed. 1984). Ever since *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916) it has been accepted that even in the absence of privity of contract an automobile manufacturer is under a duty of care to those who use the automobile. *MacPherson* is still the rule in Arizona. *Crouse v. Wilbur-Ellis Co.*, 77 Ariz. 359, 366, 272 P.2d 352, 357 (1954).

■ Intimations about limitations of duty based on unforeseeability also appear in the majority opinion. (Slip op. at 12.) *Palsgraf v. Long Island Railway Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), teaches that the duty of care does not extend to potential victims outside the zone of foreseeable risk. *Palsgraf* is the law in Arizona. *See McFarlin v. Hall, supra; West v. Cruz*, 75 Ariz. 13, 251 P.2d 311 (1952). However, a passenger in a motor vehicle is not an "unforeseeable plaintiff" as to the manufacturer of that vehicle. *Palsgraf* has no application to the present case. In short, we see no duty issue here and note that Volkswagen has raised none. Its primary argument is directed to problems connected with the standard of care applied when duty does exist.[1]

We turn, then, to the central issue presented. What type of proof must plaintiff produce in order to make a prima facie case of negligent design against a product manufacturer? What is the standard of care? In the ordinary negligence case, tried under the familiar rubric of "reasonable care," plaintiff's proof must provide facts from which the jury may conclude that defendant's behavior fell below the "reasonable man" standard. Prosser, *supra* § 31 at 169. This question is ordinarily decided without providing the jury with any direct evidence about the details of what may or may not comply with the standard of care.[2] The risk/benefit analy-

1. Volkswagen has argued the lack of foreseeability of the accident as it relates to the issues of negligence and proximate cause. *See infra* at 525–528.

2. *Cf. Moorer v. Clayton Mfg. Corp.*, 128 Ariz. 565, 627 P.2d 716 (App.1981). *Moorer* is a strict

liability, defective design case in which, as here, the court disagreed with defendant's contention that appellee (plaintiff) had not sustained its burden of proof by failing to present evidence of the product's non-conformance with the applicable standard. The court explained:

sis involved in deciding what is reasonable care under the circumstances is generally left to the jury, *id.* at 173,

> ... and the function of the jury in fixing the standard of reasonable conduct is so closely related to law that it amounts to a *mere filling in of the details of the* legal standard.

Prosser, *supra* § 37, at 238.

Thus, in the usual negligence case the jury is left to reach its own conclusion on whether defendant's conduct complied with the legal standard of reasonable care. There need be no opinion testimony on the subject; the jury is encouraged, under proper instruction, to consider the circumstances, use its own experience and apply community standards in deciding what is or is not negligence. *Id.* at 237; § 32, at 173–74.

Volkswagen claims that negligent design cases are an exception. They contend that product manufacturers are held to an expert's standard of care, as are professionals such as lawyers, doctors and accountants. In professional malpractice cases the reasonable man standard has been replaced with the standard of "what is customary and usual in the profession." Prosser, *supra* § 32, at 189. This, of course, requires plaintiff to establish by expert testimony the usual conduct of other practitioners of defendant's profession and to prove, further, that defendant deviated from that standard.

> It has been pointed out often enough that this gives the medical profession, and also the [other professions], the privilege, *which is usually emphatically denied to other groups*, of setting their own legal standards of conduct, merely by adopting their own practices.

*Id.* (emphasis supplied) (citations omitted).

Should we adopt for manufacturers in negligent design cases a rule "emphatically denied to other groups" but similar to those applied to defendants in professional malpractice cases? Such a rule, of course, would require—not just permit—plaintiff to present explicit evidence of the usual conduct of other persons in the field of design by offering expert evidence of what constitutes "good design practice." Plaintiff would also be required to establish that the design adopted by the defendant deviated from such "good practice." We believe that such a rule is inappropriate.

█ The malpractice requirement that plaintiff show the details of conduct practiced by others in defendant's profession is not some special favor which the law gives to professionals who may be sued by their clients. It is, instead, a method of holding such defendants to an even higher standard of care than that of an ordinary, prudent person. Prosser, *supra* § 32 at 185. Such a technique has not been applied in commercial settings, probably because the danger of allowing a commercial group to set its own standard of what is reasonable is not offset by professional obligations which tend to prevent the group from setting standards at a low level in order to accommodate other interests. Thus, it is the general law that industries are not permitted to establish their own standard of conduct because they may be influenced by motives of saving "time, effort or money." Prosser, *supra* § 33 at 194. Long ago, Judge Learned Hand expressed the rule in a case in which the defendant claimed that it had not been negligent in failing to put Mr. Marconi's invention on its tugboats:

> Is it then a final answer that the business had not yet generally adopted receiving sets? ... Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own

---

Appellee's expert witness testified that the "nip-point" made it hazardous. The jury saw pictures of the machine and heard testimony describing how the emissions control test was performed and how the accident happened.

Whether the design there satisfied the strict liability standard was a question of fact for the jury.
Id. at 568, 627 P.2d at 719.

tests, however persuasive be its usages. Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission.

*The T. J. Hooper,* 60 F.2d 737, 740 (2d Cir.1932). This, of course, is not to say that evidence of custom and usage is inadmissible.

What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.

*Texas & Pacific Railway Co. v. Behymer,* 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905 (1903) (Holmes, J.). Holmes' view has been previously considered and approved by this court. *Atchison, Topeka & Santa Fe Railway Co. v. Parr,* 96 Ariz. 13, 17, 391 P.2d 575, 578 (1964).

Volkswagen argues that case law already recognizes that in negligent design cases a manufacturer is not liable absent a showing that he failed to conform to the standard of care in design followed by other manufacturers. We do not agree. *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.,* 140 Ariz. 383, 682 P.2d 388 (1984); *Boyce v. Brown,* 51 Ariz. 416, 77 P.2d 455 (1938); and *Riedisser v. Nelson,* 111 Ariz. 542, 534 P.2d 1052 (1975), are, for instance, cases involving professionals (insurance broker and physicians) sued by their clients or patients. *National Housing Industries, Inc. v. E.L. Jones Development Co.,* 118 Ariz. 374, 576 P.2d 1374 (App.1978) involves the liability of a professional engineer to the assignee of its client, a developer. None of these cases consider the liability of a manufacturer for defects in mass-produced products. They do involve, instead, the liability of professionals who generally work in close relationship with their clients or patients. *Cardullo v. General Motors Corp.,* 378 F.Supp. 890 (E.D.Pa.1974), *affirmed,* 511 F.2d 1392 (3rd Cir.1975) is inapposite but illustrates the difference. In *Cardullo* the court held that plaintiff's case failed for lack of expert evidence that the use of a single master brake cylinder was hazardous. Proof that the alternative of a dual master cylinder system was available was not, in itself, sufficient to make a prima facie case because plaintiff was also required to prove that the use of the single system was unreasonably dangerous. That is quite different from holding that plaintiff was obligated to prove, additionally, that industry practice required the use of a dual master cylinder. The latter ruling would, of course, tend to permit commercial defendants to prevail as a matter of law if their conduct complied with a general, negligent practice prevailing in their industry. This is exactly the rule criticized in Prosser, rejected by both Justice Holmes and Judge Hand, and rejected by this court in *Parr, supra.*

In view of public policy and existing law, we decline to transform defective design cases into malpractice cases. We believe the law is best left as it is in this field. Special groups will be allowed to create their own standards of reasonably prudent conduct only when the nature of the group and its special relationship with its clients assure society that those standards will be set with primary regard to protection of the public rather than to such considerations as increased profitability. We do not believe that automobile manufacturers fit into this category. This is no reflection upon automobile manufacturers, but merely a recognition that the necessities of the marketplace permit manufacturers neither the working relationship nor the concern about the welfare of their customers that the professions generally permit and require from their practitioners.

■ Therefore, in Arizona the rule in negligence cases shall continue to be that evidence of industry custom and practice is generally admissible as evidence relevant to whether defendant's conduct was reasonable under the circumstances. In determining what is reasonable care for manufacturers, the plaintiff need only prove the defendant's conduct presented a foreseeable, unreasonable risk of harm. As in all other negligence cases, the jury is permit-

ted to decide what is reasonable from the common experience of mankind. We do not disturb the rule that in determining what is "reasonable care," expert evidence may be required in those cases in which factual issues are outside the common understanding of jurors. *Atchison, Tope-. ka & Santa Fe Railway Co. v. Parr*, 96 Ariz. at 18, 391 P.2d at 578-79. However, unlike most malpractice cases, there need not be explicit expert testimony establishing the standard of care and the manner in which defendant deviated from that standard. M. Udall & J. Livermore, LAW OF EVIDENCE § 25 at 43–44 (2d ed. 1982). With these principles in mind, we now turn to a consideration of the evidence in order to determine whether plaintiff did prove a prima facie case.

*Application to the Evidence*

Plaintiff presented two experts, Jon McKibben, an automotive engineer, and Charles Turnbow, a safety engineer. Their testimony established that the great majority of cars on the road at the time the Beetle in question was designed had batteries located outside the passenger compartment, usually in the engine compartment and occasionally in the luggage compartment. There was evidence from which the jury could find that from both an engineering and practical standpoint the 1958 Volkswagen could have been designed with the battery outside the passenger compartment, as was the Karmann Ghia, an upscale model which used the same chassis as the Beetle. There was further testimony that placement of the battery inside the

passenger compartment was unreasonably dangerous because "batteries do fracture in crashes, not infrequently." According to McKibben,

> the degree to which the battery inside the compartment is a hazard depends to some extent on how likely it is that that battery is going to become dislodged or fractured or somehow spill acid. And certainly in a roll-over type crash, a battery in that location is more likely to be a hazard to the occupants. So the fact that this model Volkswagen tends to turn over with relatively high frequency makes the battery placement inside the car a more serious hazard than it might be in other types of vehicles.

(Trial transcript of October 9, 1979, at 42; *see also* transcript of October 10, 1979 at 48–49 (Turnbow).)

Volkswagen argues that the danger of interior battery location was unforeseeable to a designer/manufacturer in the relevant time frame 1957–58. Of course, the contemporaneous foreseeability of unreasonable danger is the litmus test for negligent conduct.[3] Restatement § 289 comment b. If Volkswagen could not have foreseen that locating the battery within the passenger compartment posed an unreasonable risk of harm, then its design would not be negligent. Volkswagen argues that the only danger was Ms. Rossell's unforeseeable use of a battery too big to fit the restraints provided in Volkswagen's design.[4] However, the jury could have found that this did not affect the design hazard involved. While the battery in question was too large to fit in the designed re-

---

**3.** This distinguishes a negligent design case from a strict liability design case. In the latter, the quality of the product is the issue and is determined in light of knowledge which is obtained after manufacture. *See, e.g., Phillips v. Kimwood Machine Co.*, 269 Or. 485, 491, 525 P.2d 1033, 1036 (1974).

**4.** There was some conflict in the testimony with respect to the foreseeability of the use of oversized replacement batteries. Plaintiff's experts claimed that the original equipment battery was unavailable in America and could not be used for replacement, so that a replacement battery would be larger than the designed system.

Volkswagen counters with the argument that vehicles manufactured for the export market, particularly in America, were designed for and equipped with a larger battery. This difficult factual issue is not as important as it might seem, at least to our review, because there was testimony from plaintiff's experts that replacement on most Volkswagens was with a battery even larger than either of those. This larger battery would fit neither the domestic nor the export battery restraint systems of the Beetle. It was, in fact, this larger battery that the Rossell vehicle was using at the time of the accident.

straints, there was a danger of battery fracture during an accident even when batteries were properly restrained. Finally, there was testimony that various factors, including natural corrosion and deterioration, would often impair restraint systems, so that even a properly sized battery might be dislodged in a roll-over type accident.

■ We conclude that the plaintiff did present expert evidence that the battery design location presented a foreseeable, unreasonable risk of harm, that alternative designs were available and that they were feasible from a technological and practical standpoint. We reject Volkswagen's contention that in addition to the evidence outlined above, plaintiff was compelled to produce expert opinion evidence that the standard of "good design practice" required Volkswagen to design the car so that the battery system was located outside the passenger compartment. Unlike a malpractice case, the jury was free to reach or reject this conclusion on the basis of its own experience and knowledge of what is "reasonable," with the assistance of expert opinion describing only the dangers, hazards and factors of design involved.[5]

## PROXIMATE CAUSE

Volkswagen argues that "foreseeability must be established as an element of proximate cause" (Defendant's Supplemental Brief at 21), and that the real proximate cause of plaintiff's injury in the present case was the intervening, superseding negligence of the unknown person that installed a battery too large to be contained by the restraint system of Rossell's car. (*Id.* at 8.) The court of appeals agreed. (Slip op. at 12–16.) Since the trial judge did

instruct the jury on the proximate cause issue, all questions of fact on that issue have been resolved in plaintiff's favor.[6]

■ An intervening cause is one which intervenes between defendant's negligent act and the final result and is a necessary component in bringing about that result. Prosser, *supra* § 44 at 301, *et seq.* Given the complexity of life, there is little that can be attributed to any single act, and the law does not relieve a defendant from liability simply because of the intervening act of a third person. It is only when the intervening act is considered superseding cause that the original actor is relieved of liability for his negligence. *Id.* The test for a superseding cause is simpler to articulate than it is to apply and has been a frequent source of litigation and confusion.

In the final analysis, the question of superseding cause

has been determined by asking whether the intervention of the later cause is a significant part of the risk involved in defendant's conduct, or so reasonably connected with it that the responsibility [of defendant] should not be terminated. It is therefore said that the defendant is to be held liable if, but only if, the intervening cause is "foreseeable."

But here, . . . this overworked and undefined word covers a multitude of sins. It is at least clear that in many cases recovery has been allowed where the intervening cause was not one which any reasonable actor could be expected to anticipate or have in mind, but it is regarded as 'normal' to the situation which the actor has created. In other words, although the theory of the cases is one of

---

5. We need not concern ourselves with whether any of these issues could have been submitted to the jury without expert evidence. The evidence was presented; there is no need to go beyond that.

6. In part, the instruction read as follows:
   Not all intervening causes are superseding causes. A superseding cause is an intervening cause which by its nature becomes the proximate cause of the injury and relieves the defendant of any liability for said injury.

For an intervening cause to be a superseding cause it must be a cause which could not have been reasonably foreseen or anticipated by the defendant.
Defendant has not claimed that the trial court erred in this instruction. As will be seen, *infra,* at 526, the instruction was probably more favorable to defendant's position than is justified by the current state of the law.

foreseeability, a considerable element of hindsight may have entered into its practical application.

*Id.* at 302–03; see also Restatement, § 435 comment d.

Thus, the text writers and commentators generally acknowledge that an intervening force becomes a superseding cause only when its operation was both unforeseeable and when with the benefit of "hindsight" it may be described as abnormal or extraordinary. These principles have been acknowledged in Arizona whenever the issues have been raised. *See, e.g., Ontiveros v. Borak,* 136 Ariz. 500, 506, 667 P.2d 200, 206 (1983) (superseding cause is one which is unforeseeable and, viewed through hindsight, extraordinary); *Parness v. City of Tempe,* 123 Ariz. 460, 464, 600 P.2d 764, 768 (App. 1979) (where the intervening negligent or intentional act was within the scope of the original risk created by defendant's negligence, it is not a superseding cause); *Central Alarm of Tucson v. Ganem,* 116 Ariz. 74, 567 P.2d 1203 (App.1977) (burglar alarm company which left a key to deactivate the alarm system where it was accessible to unauthorized persons is not relieved of liability by intervening criminal acts of a third party).

These cases encompass the rule that the scope of the risk created by the negligence of the original actor may include the foreseeable negligent or criminal conduct of others. *Hemet Dodge Corp. v. Gryder,* 23 Ariz.App. 523, 534 P.2d 454 (1975) (Installer of incorrect radiator cap is liable notwithstanding the intervening act of the driver who negligently removed the cap from an overheated engine in the presence of others, including the plaintiff.); *Brand v. J.H. Rose Trucking Co.,* 102 Ariz. 201, 427 P.2d 519 (1967); Prosser, *supra* § 44 at 304. The Restatement indicates that the intervening negligence of a third person is not a superseding cause if the original actor's conduct was a substantial factor in bringing about the result and if "a reasonable man knowing the situation *existing when the act of the third person was done* would not regard it as highly extraordinary

that the third person had so acted...." Restatement § 447(b) (emphasis supplied); *Serrano v. Kenneth A. Ethridge Contracting Co.,* 2 Ariz.App. 473, 409 P.2d 757 (1966); *see also* Restatement §§ 435 and 442(b).

■ Thus, defendant is not relieved of liability simply because he could not have foreseen the manner in which the accident occurred, including the negligent intervention of third parties. *Schnyder v. Empire Metals, Inc.,* 136 Ariz. 428, 430, 666 P.2d 528, 530 (App.1983). The question is whether the plaintiff was in the foreseeable range of defendant's negligent conduct (designing the vehicle with a battery located inside the driver's compartment) and whether the injury resulted from the recognizable risk that made that conduct negligent. *Id.*

With these principles in mind we turn again to the evidence to determine whether the trial court was required to rule as a matter of law that defendant's negligence was superseded by the intervening acts of the battery installer and the driver. The record indicates that the vehicle was made with a battery which foreseeably would need replacement every two to four years. According to one of plaintiff's experts, the car was designed with

... a battery size and battery cover size which was almost impossible to fit in terms of an available [replacement] battery here in the United States or into which it was almost impossible to fit an available battery size.

(Trial transcript of October 4, 1979 at 113 (McKibben).)

Defendant's version of the facts was that properly sized replacement batteries were available and it was unforeseeable that properly sized replacement batteries would not be used. Nevertheless, there was evidence that the risk in locating the battery inside the passenger compartment was raised by the foreseeable non-use of the restraint system. McKibben testified:

I believe I mentioned before the fact that hold-down systems tend to deteriorate with the passage of time. They tend to

corrode. They tend to become unusable so that when batteries are replaced, it is often not possible to reuse the previous restraint system or hold-down system. And obviously from my own personal experience, whoever installs the battery under those circumstances does not go out and seek additional or alternate hold-down parts ... to hold the battery back down.

Secondly, in this particular case, assuming that this vehicle came with a 66-amp-hour battery of dimensions described in the Volkswagen's drawings that I have reviewed, I don't think that the cover and that ... the standard hold-down system would be usable and on a readily obtainable battery. It just flat won't fit on a battery that someone would be able to go down and buy at a typical battery outlet.

(Trial transcript of October 9, 1979 at 44.)

■ In the final analysis, then, the intervening act of some third person consisted of installing a battery of *any* size without using the designed restraint system. In the present case the failure to use the restraint system may have been the result of using an oversized battery, of deterioration of the system through corrosion, of the installer's negligence, or of another cause. There was evidence that properly restrained batteries may break loose from the tie down system in a roll-over accident, so that design must also account for the danger of a properly restrained battery coming loose because of the nature of the accident. There was even further evidence that batteries that did not come loose could be fractured in accidents. The jury could find, in other words, that the hazard created by Volkswagen's location of the battery in the passenger compartment was that the battery, when fractured for any one of a variety of reasons, would expose occupants to the danger of burns from sulfuric acid. We do not believe that it can be said as a matter of law that the fracture of a battery resulting in burns to someone within the passenger compartment was not attributable to the recognizable risk. *Schnyder v. Empire Metals, supra.* The injury was within the scope of the risk created by defendant's original design; whether the exact manner in which the accident occurred was foreseeable to defendant is not the determining factor. *Id.;* Restatement § 449.[7]

We hold that plaintiff did make a prima facie case of negligence and proximate cause. The trial court did not err in failing to direct a verdict or grant judgment n.o.v. Because we must vacate the court of appeals opinion, we now turn to the remaining issues which defendant raised on appeal and which the court of appeals did not address.

## DID THE TRIAL COURT ERR BY ALLOWING PLAINTIFF TO REFER TO THE BEETLE'S PROPENSITIES TO ROLL-OVER AND TO INTRODUCE CARBON MONOXIDE INTO THE PASSENGER COMPARTMENT?

At the end of plaintiff's case Volkswagen moved for directed verdicts on plaintiff's theories pertaining to strict liability for the Beetle's propensities to roll over, strict liability for the propensity to introduce carbon monoxide into the passenger compartment, and negligent design of the battery system. The trial court granted the motion only with respect to the two strict liability claims. Volkswagen argues that plaintiff's persistent references, after the directed verdicts, to the Beetles' roll-over and carbon monoxide problems denied it a fair trial. It contends that the many examples of plaintiff's "continu[ing] to try issues removed by the directed verdict" (Defendant's Opening Brief to the Court of Appeals at 43) include such questions as the

---

7. *Cf: Peck v. Ford Motor Co.,* 603 F.2d 1240 (7th Cir.1979) (applying Indiana law), the case on which Volkswagen relies most heavily. *Peck* may well be a case in which defendant's tort had "spent its force." *Id.* at 1244. Indiana law on superseding cause is so substantially different from Arizona's that *Peck* has no application to the case at hand. Compare for example, *Conder v. Hull Lift Truck, Inc.,* 435 N.E.2d 10, 14–15 (Ind.1982) with *Ontiveros v. Borak,* 136 Ariz. 500, 506, 667 P.2d 200, 206 (1983).

following, posed by plaintiff's counsel to one of defendant's expert witnesses:

> If a vehicle had a propensity to roll-over with a fairly high frequency, do you think that ought to be taken into account in designing the placement of the battery in that vehicle and the retention system?

■ The grant of a directed verdict does not cleanse the record of facts adduced to support the legal theories taken from the jury. Evidence which fails to establish the theory at which it was aimed may, nevertheless, be considered on any other issue to which it is relevant. The trial court responded to defendant's objections by ruling that carbon monoxide was removed from the case with respect to the issue of defective heater design, but not with respect to its possible soporific effect on the car's occupants. The court also ruled that the evidence of roll-over propensity was still admissible because it related to the question of whether the interior location of the battery system was negligent. Both rulings were correct. Plaintiff could argue all evidence relevant to her theory of negligent battery design, whether she originally brought the case under that theory alone or under several theories, some of which were later dismissed. Directed verdicts on some theories do not change what is relevant to remaining theories. *See, e.g., Brady v. Melody Homes Manufacturer,* 121 Ariz. 253, 589 P.2d 896 (App.1979).

Finally, the court explicitly told the jury during plaintiff's closing argument that two of the three issues had been removed from the case, that battery location was the only issue remaining and that evidence regarding roll-over danger and carbon monoxide were to be considered only if relevant on the issue of battery location and the conduct of plaintiff and her mother. The jury instructions given later repeated this. We find no error.

### JURY INSTRUCTIONS

■ Volkswagen claims to be entitled to a new trial because Instructions Nos. 14

and 22 pertained to theories of law not supported by the facts, and invited speculation as to abstract circumstances. Instruction No. 14 given by the trial court was as follows:

> You are instructed that the negligence, if any, of Phyllis Rossell may not be imputed to Julie Ann Kennon.

Volkswagen argues that it was never its theory that Ms. Rossell's action could or should be 'imputed' to Julie, but only that Ms. Rossell's actions were the sole proximate cause of Julie's injuries. It argues that instruction on imputation, combined with the instruction on superseding cause, could only have rendered the jurors "hopelessly confused." We disagree.

Jury instructions should inform the jury of the law that they are to apply to the facts. *Noland v. Wootan,* 102 Ariz. 192, 194, 427 P.2d 143, 145 (1967). They should also limit consideration to those issues which the jury is to determine. *Embrey v. Galentin,* 76 N.M. 719, 418 P.2d 62, 64 (1966). Here the instruction on imputation was clearly intended to limit the jury's attention to the issues properly before it.[8] Defendant's reliance on *Noland v. Wootan, supra,* is misplaced. In that case we found the jury instruction to be reversible error because it had two mutually exclusive meanings; because the jury could have applied the wrong meaning, we held that the instruction was misleading and prejudicial. We cannot come to the same conclusion in this case. Instructions prohibiting speculation about imputed negligence and defining proximate cause are not mutually exclusive. The jury could have and should have applied both instructions.

■ Instruction No. 22 given by the trial court was as follows:

> If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate for any of the

---

8. Because plaintiff was eleven months old at the time of the accident, contributory negligence was of course precluded as a defense. The

reasonable foreseeability of the mother's conduct was relevant to the issue of proximate cause.

following elements of damages proved by the evidence to have resulted from the defendant's negligence:

\* \* \* \* \* \*

4. *Any decrease in earning power or capacity in the future.*

Whether any of these elements of damages has been proved by the evidence is for you to determine.

(emphasis supplied). Volkswagen argues that the instruction is reversible error for two reasons. First, because it claims: "[i]f a plaintiff can work *at all, an award for total loss of earning capacity is improper.*" (Emphasis in original.) However, the instruction in question does not require that the jury make an award for "total loss of earning capacity," only for "any decrease" which is proved.

■ Second, Volkswagen claims that the trial court erred in giving Instruction No. 22 because there was no evidence to support an award for decreased earning capacity. We disagree because there was evidence of decreased earning capacity. That evidence consisted of the jurors' view of the plaintiff, the pictures of the plaintiff and the medical testimony about the permanent, disfiguring injuries sustained by the plaintiff. There is a difference between loss of earnings—not an issue in this case—as an item of special damages and decrease of earning capacity as an item of general damages. *Mandelbaum v. Knutson,* 11 Ariz.App. 148, 149, 462 P.2d 841, 844 (1969). To sustain an award for the former, the plaintiff must produce evidence *of specific losses which are ordinarily* reduced to present value. *Id.* To sustain an award for the latter, the plaintiff must establish only the fact of diminished capacity and its permanence. *Atchison, Topeka & Santa Fe Ry. Co. v. Parr, supra.* The photographs of plaintiff's scars create a jury question with regard to whether her disfiguring injuries would affect plaintiff's earning capacity. It is certain that plaintiff's ability to perform some jobs has not been affected and her ability to perform others has been diminished or destroyed. No doubt some interviewers will be able to

overlook the scars and some will not, no matter how hard they try. Perhaps plaintiff will overcome the impediment, perhaps not. Such questions are properly left to the jury.

There was no error in giving either instruction.

## DID THE TRIAL COURT ABUSE ITS DISCRETION BY PERMITTING ILLUSTRATIVE EVIDENCE INTO THE JURY ROOM?

■ Volkswagen first complains that components of various Beetle battery systems, admitted for illustrative purposes only, should not have been allowed into the jury room during the jury's deliberations. The problem to be avoided is allowing the jury to conduct its own experiments.

In attempting to distinguish between proper and improper use of tangible exhibits, the most commonly drawn distinction is between experiments which constitute merely a closer scrutiny of the exhibit and experiments which go 'beyond the lines of evidence' introduced in court and thus constitute the introduction of new evidence in the jury room.

*McCormick on Evidence* § 217 at 541 (E. Cleary, ed., 2d ed. 1972). The decision as to what testimonial exhibits are to be permitted into the jury room is within the trial court's discretion. *Falcher v. St. Luke's Hospital Medical Center,* 19 Ariz.App. 247, 252, 506 P.2d 287, 292 (1973); *McCormick, supra.* There is no indication that the jury did use or could have used the exhibits for any particular experimental purpose beyond those presented in the evidence. The components, therefore, were of the type useful for "closer scrutiny." There was no abuse of discretion in sending them to the jury room.

■ Defendant also complains the trial court erred by admitting four large charts concerning the effects on humans of certain levels of carbon monoxide. The charts were prepared by Mr. Turnbow. Three of the charts contained summaries of data from clinical studies made by others; the fourth summarized Turnbow's opinions.

Volkswagen argues that because they were not the original treatises the first three charts do not fit into the "learned treatise" hearsay exception of Rule 803(18), Ariz.R. Evid. 17A A.R.S., and were therefore inadmissible. Furthermore, even if the exception was applicable, Volkswagen argues that Rule 803(18) permits admissible statements from treatises only to be read into the record, not received physically into evidence.

The learned treatise exception to the hearsay rule stems from three independent guarantees of trustworthiness of such works. Treatises admissible under Rule 803(18) are written impartially in favor of truth as the authors see it; they are subject to careful professional scrutiny for inaccuracies by the author's colleagues; and the author has an interest in its accuracy because his or her reputation is at stake. 6 J. Wigmore, EVIDENCE § 1692 (Chadbourn rev. 1976). The purpose served by limiting the jury's exposure to an oral reading at the time the expert is being examined is to avoid the jurors' possible misunderstanding and misuse of the technical treatise when it is later examined in the jury room with no one present to explain or be cross-examined. 4 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE § 803(18)[01].

The dangers at which the rule's restrictions are aimed, were not present in this case. The charts did not purport to be excerpts from the treatises, but only the opinions of the witness as to what the articles established. When the trial judge admitted the charts, he specifically admonished the jury that they should not regard the charts as substantive evidence of the material contained in them, but only as illustrative of the witness' opinions as to the effects of carbon monoxide. The limitation of the rule to oral recitation of the text of a learned treatise was not violated and it was within the trial court's discretion to allow the charts into the jury room.

Finally, defendants argue that they are entitled to a new trial because the verdict is not justified by the evidence and is contrary to the law. This contention is disposed of by our previous discussion.

The opinion of the court of appeals is vacated. The judgment is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.