707 P.2d 979

Wilford M. GURR, Plaintiff-Appellant,

v.

Robert B. WILLCUTT, D.O. and Jane Doe Willcutt, husband and wife; Richard H. Beck, D.O. and Jane Doe Beck, husband and wife; Robert B. Willcutt, D.O. and Robert H. Beck, D.O., a professional corporation; William L. Hull, D.O. and Jane Doe Hull, husband and wife; Central Arizona Medical Associates, a professional corporation; Thomas J. Trahan, D.O. and Jane Doe Trahan, husband and wife; Thoracic Cardiovascular Associates, Ltd.; Mesa Hospital Medical Center, Defendants-Appellees.

No. 1 CA–CIV 7426.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 26, 1985.

576

Gove L. Allen, Mesa, for plaintiff-appellant.

Weyl, Guyer, MacBan & Olson by Thomas G. Bakker, Phoenix, for defendants-appellees Willcutt, Beck, Hull and Central Arizona Medical Associates.

Snell & Wilmer by Lonnie J. Williams, Jr., Phoenix, for defendants-appellees Trahan and Thoracic Cardiovascular Associates, Ltd.

Lewis and Roca by Roger W. Kaufman, Beth J. Schermer, Phoenix, for defendant-appellee Mesa Hosp. Medical Center.

## OPINION

GRANT, Judge.

The plaintiff Wilford M. Gurr (Gurr) appeals from the granting of motions for summary judgment in favor of all defendants in his medical malpractice suit. The plaintiff argues that the superior court was without jurisdiction to rule on a motion for summary judgment until his claim had been heard by a medical liability review panel. He also argues that granting summary judgment on the issue of informed consent was improper. We hold that the trial court had jurisdiction to render summary judgment and that granting summary judgment was proper.

## FACTS

In June, 1981, Gurr, then 62 years old, became ill after a strenuous hiking trip. He had irregular heartbeats, shortness of breath and tightness in his chest. His family physician referred him to defendants Robert B. Willcut, D.O., and Richard H. Beck, D.O., internal medicine specialists. Defendant William L. Hull, D.O., cardiologist and internal medicine specialist, who practiced with defendant Central Arizona Medical Associates, was called in for a second opinion. Gurr was also referred to Thomas J. Trahan, D.O., thoracic and cardiovascular surgeon, also a defendant, who practiced with defendant Thoracic Cardiovascular Associates, Ltd.

These physicians diagnosed Gurr's condition as a second degree atrioventricular heart block. Gurr claims he was told he was having a "rheumatic fever heart attack." Gurr had a history of rheumatic fever as a young adult. The hospital records show the diagnosis as "rheumatic heart disease with second degree AV block," as "second degree AV block ... possibly representing exacerbation of rheumatic carditis," and as "secondary AV block, secondary possibly to rheumatic heart fever." Gurr was admitted to Mesa General Hospital (named as defendant Mesa Hospital Medical Center) for treatment on July 9, 1981. The next day, the doctors recommended implantation of a pacemaker. Defendant Trahan performed the surgery.

Gurr felt that his condition was worse after the surgery, that his "heart was fighting against this pacemaker." and that his earlier symptoms were aggravated by the pacemaker. Gurr consulted with another physician, Mark S. Stern, M.D. Dr. Stern wrote in a letter to plaintiff's attorney: "From the information I have, it is most difficult for me to say why a permanent pacemaker was implanted and why this particular model was selected." Dr. Stern adjusted the pacemaker to a much slower beat and Gurr felt quite improved.

Gurr filed suit against the treating physicians and against Mesa Hospital Medical Center on December 23, 1982.[1] He alleged that "[t]he defendants conspired with one another and between themselves to give Wilford M. Gurr unneeded emergency medical treatment and an unneeded permanent pacemaker for the purpose of obtaining unwarranted and unreasonable financial gain." The treatment was unnecessary, Gurr alleged, because the doctors gave him a false diagnosis that he was suffering from a rheumatic heart attack caused by a relapse of his rheumatic fever and a false prognosis that unless he received immediate treatment he would suf-

---

1. M. Melvin Gentile, D.O., the anesthesiologist for the surgery, and Anesthesia Associates of Arizona were also named as defendants. By stipulation these parties were dismissed from the suit.

fer death or severe disability. The plaintiff further alleged that these acts fell below the applicable standard of care for each class of health care professionals named as defendants.

Interrogatories were propounded to the plaintiff by Dr. Trahan, Drs. Willcutt, Beck and Hull, and by the hospital. Each set inquired about violations of the applicable standard of care and about expert witnesses. When no answers were forthcoming, Drs. Willcutt, Beck and Hull filed a motion for summary judgment arguing that the plaintiff provided no factual or legal bases for his claims. The plaintiff answered the interrogatories shortly thereafter. His answers essentially were that his illness was misdiagnosed and was not serious enough to have required emergency surgery, to which he would not have consented had he known the truth. His answers referred to two experts who had furnished letters to his attorney, Dr. Stern and Joe C. Ehrlich, M.D.

Neither of these letters described the applicable standard of care or any violation of that standard. Dr. Stern's letter, which was referred to above, concluded by suggesting that plaintiff contact another physician who could better evaluate the case. Dr. Ehrlich wrote that there was no basis for a diagnosis of rheumatic heart disease. However, he had no question "that Mr. Gurr had serious AV nodal disease ... which, in a man of sixty-two years of age ... calls for pacemaker insertion.... I think the diagnosis was wrong, but I think the treatment was correct."

When the plaintiff provided similar answers to Dr. Trahan's interrogatories, Dr. Trahan also moved for summary judgment. Dr. Trahan argued that whether a physician possesses the requisite skill or fails to apply that skill is a material issue of fact, and that the plaintiff failed to show there was a genuine issue of material fact. The hospital also filed a motion for summary

judgment. The plaintiff concedes that if the superior court had jurisdiction to grant summary judgment, the hospital was entitled to it.

The plaintiff filed a motion to quash the motions for summary judgment and in the alternative an opposition to the motions. The motion to quash alleged that the superior court had no jurisdiction to render summary judgment until a medical malpractice review panel reached a decision. He opposed the motions for summary judgment by describing how the diagnosis of rheumatic heart disease was incorrect and how there was a failure to provide informed consent. Further facts regarding the motions will be set forth as needed.

The trial judge granted summary judgment for all defendants. The plaintiff filed a petition for special action in the Arizona Supreme Court, which was not granted. He then filed a motion for new trial. This motion was denied.

On appeal two issues are raised: (1) whether in a medical malpractice suit the superior court is divested of "jurisdiction" to rule on a motion for summary judgment until a medical liability review panel has reached a decision, and (2) whether the trial judge was correct in granting summary judgment for the defendants on the issue of informed consent.[2]

## WHETHER THE TRIAL COURT WAS DIVESTED OF "JURISDICTION"

■ We place the word "jurisdiction" in quotation marks here because it is the word used by the plaintiff. We question its use in this context. The superior court clearly has jurisdiction over medical malpractice claims. A.R.S. §§ 12–561 to 12–569. What the plaintiff is questioning is whether the superior court has *legal authority* to rule on a motion for summary judgment in a malpractice action before the

---

**2.** The plaintiff in his opening brief seems to argue that the trial court erroneously failed to consider the records and reports of Dr. Stern and Dr. Ehrlich. There is no motion or order to preclude the use of these items in the record.

In fact both sides of this dispute relied on the letters for their respective arguments. It appears the trial judge considered these documents in reaching her decision to grant summary judgments. We do not address this issue.

medical malpractice review panel has reached its decision. *See In Re Marriage of Hinkston,* 133 Ariz. 592, 653 P.2d 49 (App.1982). The question then is whether the trial court committed legal error in ruling on the motion for summary judgment when it did. *See Estes v. Superior Court,* 137 Ariz. 515, 672 P.2d 180 (1983). In *Estes* the supreme court said that subject matter jurisdiction is the power to hear and determine cases of the general class to which the particular proceedings belong. The power to hear and decide the general class of medical malpractice tort cases devolves upon the superior court.

The plaintiff's complaint was filed under the provisions of the Medical Malpractice Act, A.R.S. §§ 12–561 to 12–569. Under the Act, a complaint for medical malpractice is filed with the superior court. The presiding judge of the superior court refers the matter to a medical liability review panel within 20 days after the expiration of the time for the defendant's answer. A.R.S. § 12–567(A). The presiding judge appoints the members of the panel, which is comprised of one superior court judge, one attorney and one health care provider who engages in the same area of practice as that involved in the case. A.R.S. § 12–567(B). The panel's responsibility is to "determine, with respect to each claim against each defendant, whether the evidence presented to the panel by all parties supports a judgment for the plaintiff or for the defendant." A.R.S. § 12–567(F). The panel's conclusion may be admitted into evidence at any subsequent trial. A.R.S. § 12–567(K). For background on the Act and an examination of the effectiveness of the panel system, *see* Comment, *A Practical Assessment of Arizona's Medical Malpractice Screening System,* 1984 Ariz. St.L.J. 335.

The superior court has original jurisdiction of cases and proceedings in which exclusive jurisdiction is not vested by law in another court. Ariz. Const. art 6, § 14, cl. 1. "[T]he presumption is in favor of retention rather than divestiture of jurisdiction." *Daou v. Harris,* 139 Ariz. 353, 356, 678 P.2d 934, 937 (1984). The legislature must express an intent to divest the superior court of jurisdiction or legal authority explicitly and clearly. *Id.*

■ *Daou v. Harris* held that the Medical Malpractice Act did not divest jurisdiction of the superior court to enter default judgment before the claim had been referred to and acted upon by a medical liability review panel. The defendant physician Harris argued that A.R.S. § 12–567(A) requiring the presiding judge to refer the matter to a panel within ten days after answer, was a jurisdictional divestiture of the superior court. (By Laws 1982, ch. 224, § 1 the time limit was extended to 20 days.) The Arizona Supreme Court rejected the argument because the act did not contain a clear and explicit divestiture of jurisdiction.

The *Daou* court found a lack of explicit language on two grounds. First, the legislature was presumed to know the existing laws, including the rules pertaining to answer and default. The Act's failure to specifically address the effect of these rules meant the legislature did not intend to foreclose jurisdiction by the superior court over these matters. Second, the purposes of the panel system are to separate frivolous claims from meritorious ones and to encourage pretrial settlements. The purposes would be frustrated if a panel were required even when one party had not appeared.

These grounds are equally applicable to motions for summary judgment as well as to defaults. Rule 56(b), Arizona Rules of Civil Procedure provides:

A party against whom a claim ... is asserted ... may, *at any time,* move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof. [emphasis added.]

The Medical Malpractice Act does not remove the applicability of rule 56 with its broad rule on timing from these actions.

Nor would the purpose of the panel be furthered by limiting the legal authority of the superior court to rule on motions for

summary judgment. "[I]f there is the slightest doubt as to whether a factual issue remains in dispute, the granting of summary judgment is erroneous and the doubt must be resolved in favor of a trial on the merits." *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 562, 667 P.2d 750, 756 (App.1983). If a claim cannot muster the minimal requirements to withstand a motion for summary judgment, it would be a waste of time, effort and expense to submit the matter to a panel.

The *Daou* court also pointed out that the legislature has expressly divested a court of jurisdiction. *E.g.* A.R.S. § 13–4040 (after remission to the trial court in a criminal matter the Arizona Supreme Court "shall have no further jurisdiction of the appeal ..."); A.R.S. § 12–902 (unless provisions of the Administrative Review Act are followed, parties seeking review of an administrative decision "shall be barred from obtaining judicial review of such decision").

The Medical Malpractice Act contains no similar divestment language. Instead it is the jurisdiction and legal authority of the panel that is delineated. The panel is to hear "[a]ny motion for relief arising out of the use of ... discovery procedures...." A.R.S. § 12–567(D). The judge assigned to the panel "shall not ... hear any motions or matters in the case not connected with the panel's duties." A.R.S. § 12–567(J). The limitation on the panel's jurisdiction and legal authority and the absence of such limitation on the trial court strongly suggest that no superior court jurisdiction or legal authority divestiture was intended by the legislature.

The nature of the system chosen by the legislature to deal with medical malpractice claims supports our conclusion. Other states require that a claim be submitted to an arbitration panel before a suit may be filed with the courts. *E.g.* MD.CTS. & JUD.PROC. CODE ANN. § 3–2A–02 (1984 Repl. vol.); *Schwartz v. Lilly*, 53 Md.App. 318, 452 A.2d 1302 (1982) (submission of medical malpractice claim to non-binding arbitration was a condition precedent to suit; failure to comply left circuit court

without jurisdiction to transfer to arbitration); and, WIS.STAT.ANN. § 655.04 (West 1980), *State ex rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 261 N.W.2d 434 (1978) (statute prohibiting suit for medical malpractice until claim reviewed by patients' compensation panel did not violate federal or state constitutional provisions).

Indiana provides a method for concurrent jurisdiction of the panel and the trial court, but expressly limits the legal authority of the trial court. Until the panel has reached its result, the trial court may rule only on specified matters. The limited legal authority includes ruling on material issues of fact for which no expert testimony is required. IND.CODE ANN. §§ 16–9.5–1–1 to 16–9.5–10–5 (Burns 1981); *Johnson v. Padilla*, 433 N.E.2d 393 (Ind.App.1982).

Our legislature did not choose a method such as those above for withholding or limiting jurisdiction or legal authority of the trial court. We presume the legislature chose the system it did for a reason: it intended for the panel and the superior court to hold concurrent jurisdiction. The panel has the limited legal authority granted by statute and the superior court retains the legal authority not specifically removed by statute.

*Daou v. Harris* also recognized that a right to a panel hearing is a substantive right. 139 Ariz. at 358, 678 P.2d at 939. Although panel review is a substantive right, the methods of perfecting and processing such rights are procedural. *Id.*

The defendants have analogized this substantive right to the constitutional right of trial by jury. U.S. Const.Amend. VII; Ariz. Const. art. II, § 23. Arizona has held that rule 56 does not unconstitutionally deprive a party of the right to trial by jury.

It is obvious that the entry of summary judgment will preclude a later trial by jury. This is the design of Rule 56—to resolve whether material issues of fact exist, and if none do, then to enter judgment for the moving party if he is entitled to it as a matter of law. It is not the intention of the rules to grant a trial on

the merits when there is no genuine fact issue or where a claim may be frivolous. *Morrell v. St. Luke's Medical Center*, 27 Ariz.App. 486, 490, 556 P.2d 334, 338 (1976) (citations omitted). *Accord*, Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2714.

The above reasoning is applicable to the granting of summary judgment in a medical malpractice suit. There is no purpose to be served in a review panel if the non-moving party cannot raise a material issue of fact within the lenient standard of rule 56.

## WHETHER SUMMARY JUDGMENT ON THE ISSUE OF LACK OF INFORMED CONSENT WAS PROPER

The plaintiff claims that there was a material issue of fact regarding the lack of informed consent. Such a claim falls within the definition of a claim for malpractice:

> "Medical malpractice action" or "cause of action for medical malpractice" means an action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services or for the rendering of such health care, medical services, nursing services or other health-related services, without express or implied consent.

A.R.S. § 12–561(2).

In his brief, Gurr states he "would not have accepted the pacemaker implant had he been informed that he was not suffering from rheumatic heart disease with increasing symptoms; that there was no risk that he would suffer a sudden death; that his heart block did not warrant a pacemaker; and that he had no symptoms that warranted a pacemaker." [3] The diagnosis of

Gurr's condition was that he suffered an AV heart block, the treatment was the implantation of the pacemaker. Gurr consented to the surgery in writing.

Every action for medical malpractice must be proven by showing:

1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances; and

2. Such failure was a proximate cause of the injury.

A.R.S. § 12–563. These same elements must be proven to withstand summary judgment. *Morrell v. St. Luke's Medical Center* (decided under law existing prior to the Medical Malpractice Act).

The letters of Dr. Stern and Dr. Ehrlich failed to meet the requirements of A.R.S. § 12–563. Both letters confirmed the diagnosis of AV heart block. Neither letter described a failure to use the proper degree of care; in fact Dr. Ehrlich, in his letter and by affidavit attached to pleadings of Drs. Willcutt, Hull and Beck, approved of the surgery. Dr. Stern's letter merely suggests he might have used a different type of pacemaker. He did not express any opinion as to a standard of care or violation of the standard. Finally, the letters made absolutely no reference to any of the complaints of Gurr.

The medical literature offered by the plaintiff does not provide adequate support for his opposition to the motions. Each article recognizes that an AV block warrants implantation of a pacemaker. The articles suggest limits on the use of pacemakers in other situations. Because Gurr did in fact suffer from an AV block, the articles do not raise a material issue of fact.

---

3. Traditionally, a claim of lack of informed consent focuses on disclosure regarding treatment or surgery, the risks and the alternatives. *See* W. Prosser and W.P. Keeton, *The Law of Torts* 5th Ed. § 32 at 189–90; *Restatement of Torts 2d* § 892B comment i (1977). The plaintiff's claim

of lack of informed consent is broader than the usual concept as it criticizes the diagnosis of the cause of the heart block. Regardless of the label of the claim, the plaintiff must make the showing required in A.R.S. § 12–563.

**582**

The articles have other problems as well. They are highly technical and quite difficult, if not impossible, for the court to analyze without the aid of expert testimony to explain points raised in the articles and to apply them to Gurr's situation. The articles also do not set forth a relevant standard of care or explain how a violation might have occurred in the instant matter.

 Our conclusions regarding jurisdiction, legal authority, and the propriety of summary judgment in this matter do not contradict the holding of *Phoenix General Hospital v. Superior Court*, 138 Ariz. 504, 675 P.2d 1323 (1984). *Phoenix General* held that a plaintiff who refused to present any evidence at a panel hearing was not subject to a summary judgment as a sanction. Presentation of evidence at a panel is not mandatory under A.R.S. § 12–567(D). The panel's decision is only one piece of evidence to be considered in subsequent proceedings. *Id.* 138 Ariz. at 507, 675 P.2d at 1326.

 In contrast, a plaintiff *must* prove the elements of A.R.S. § 12–563 to have a cause of action. If a plaintiff wants to bring his case before a jury, at some point he will have to provide expert testimony that there was a violation of the applicable standard of care. Certainly that point may occur after a panel hearing, if a defendant moves for summary judgment. We find nothing in the pertinent rules or statutes that prohibits that point from occurring prior to the panel hearing.

A motion for summary judgment by a defendant prior to a panel hearing may in some cases present an added hardship to the plaintiff. However, rule 56(f) provides a remedy for a party who needs additional time or other relief to prepare a response to a motion for summary judgment.

## CONCLUSION

The trial court had jurisdiction and legal authority to grant a motion for summary judgment prior to any action by a medical liability review panel. The plaintiff failed to raise a material issue of fact as to any defendant's failure to meet the applicable standard of care. Summary judgment was proper and the trial court is affirmed.

MEYERSON, P.J., and HAIRE, J., concur.