755 P.2d 1180

**Leslie BELL and Frederick Bell, on behalf of themselves and as natural parents for and on behalf of Arianna Bell, Plaintiffs–Appellants,**

**v.**

**MARICOPA MEDICAL CENTER, a subdivision or entity of Maricopa County, State of Arizona, Defendant–Appellee.**

No. 1 CA–CIV 9320.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 11, 1988.

Review Denied July 6, 1988.

Ely, Betinni & Ulman by Herbert L. Ely and Eileen S. Willett, Phoenix, for plaintiffs-appellants.

Thomas E. Collins, Maricopa Co. Atty. by Gordon J. Goodnow, Jr., Deputy Co. Atty., Phoenix, for defendant-appellee.

## OPINION

HAIRE, Chief Judge.

This is a medical malpractice action in which the primary issue on appeal is whether the trial court committed reversible error by refusing to instruct the jury that if it found that the hospital had violated certain hospital protocols, it could consider the violations evidence of negligence. The events giving rise to the action took place within a four day period. On August 8, 1981, Leslie Bell began experiencing premature labor contractions. At the time, she was between twenty-four and twenty-six weeks pregnant. She was admitted to the Maricopa County Medical Center, where she was treated with the drug terbutaline to stop the contractions. The drug was administered intravenously, subcutaneously, and orally over a twenty-four hour period.

The contractions eventually stopped, and Mrs. Bell was discharged from the hospital on August 10. She returned to the hospital the same day when the contractions began again. On her second visit, she was treated with the drug morphine sulfate. She was sent home on August 11, but reentered the hospital the same day when she began experiencing strong contractions. Following her readmission, she was again treated with terbutaline.

At this time, the treating physicians determined that it would be necessary to deliver the baby early because there was an infection in the amniotic sac that endangered both the mother and the child. The baby weighed one pound, eleven ounces at birth. In their joint pretrial statement, the parties stipulated that in order to keep the baby alive, it was necessary to give her more oxygen than she would normally have been exposed to at that stage of her development. The parties also stipulated that the exposure to abnormal levels of oxygen resulted in a condition called retrolental fibroplasia, which left the baby blind in one eye.

The Bells filed a complaint on behalf of themselves and the baby. Although the complaint alleged that the hospital was negligent before, during, and after the baby's birth, the action eventually focused on the claim that the hospital had provided negligent prenatal care. No claims concerning the hospital's early delivery of the baby or its treatment of the baby following her birth were pursued.

The Bells claimed that the accepted standard of medical care required that a patient who had been successfully treated with intravenous and subcutaneous doses of terbutaline be maintained on oral doses to prevent the recurrence of contractions. They contended that the hospital deviated from this standard when it discharged Mrs. Bell without continuing to treat her with oral doses of the drug. They alleged that this negligent discontinuation of Mrs. Bell's treatment caused the baby's premature birth and the resulting blindness in her left eye. Following a jury verdict in favor of the hospital, the Bells appealed.

The trial court admitted some of the hospital's protocols, or treatment plans, into evidence. The Bells argued that the protocols concerning the management of premature labor required that a patient be maintained on oral doses of terbutaline after successful intravenous and subcutaneous treatment with the drug. The hospital's experts testified that neither the written nor the oral protocols contained this requirement.

On appeal, the Bells maintain that the trial court committed reversible error by refusing to give the following instruction:

> "In taking into account in this case as to whether there was negligence or not on the part of the defendant, you may consider the standards or protocols that the defendant adopted. If you find that the standards or protocols adopted by the defendant was [sic] violated by the defendant, then that would be evidence of the defendant's negligence."

The hospital contends that the trial court properly rejected the instruction because it misstates the law. We agree with the hospital's contention.

A negligence action may be maintained only where there is a duty or obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct to protect others from unreasonable risks of harm. *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). A defendant is negligent when his conduct deviates from the recognized standard. *Prosser and Keeton on The Law of Torts* § 30 at 164 (W. Keeton 5th ed. 1984). In the ordinary negligence action, the standard imposed is that of the conduct of a reasonably prudent man under the circumstances. *Paul v. Holcomb,* 8 Ariz.App. 22, 24, 442 P.2d 559, 561 (1968). In such cases, it is not necessary for the plaintiff to present evidence to establish the standard of care because the jury can rely on its own experience in determining whether the defendant acted with reasonable care under the circumstances. *Rossell v. Volkswagen of America,* 147 Ariz. 160, 165, 709 P.2d 517, 522 (1985).

Within their areas of expertise, health care providers and other professionals are held to a higher standard of care than that of the ordinary prudent person. *Id.* at 165, 709 P.2d at 522. In professional malpractice cases, the reasonable man standard is therefore replaced by a standard based upon the usual conduct of other members of the defendant's profession in similar circumstances. *Id.* In such cases, the plaintiff must present evidence of this accepted professional conduct to enable the jury to determine the applicable standard. *Id.* The plaintiff must then establish the professional defendant's negligence by demonstrating that his conduct deviated from the standard. *Id.*

Arizona Revised Statutes § 12–563 governs the plaintiff's burden of proof in medical malpractice actions. In order to satisfy the requirement of establishing a standard of care and a deviation from that standard, the plaintiff must present evidence that "[t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession

or class to which he belongs within the state acting in the same or similar circumstances." A.R.S. § 12–563 [1].

In their opening brief, the Bells make the following argument in support of the contested instruction:

> "While a hospital's voluntarily assumed standards, protocols, and regulations may not conclusively prove the legal standard of care (the protocols may rise above the legal standard or fall below it), they are surely some evidence of the standard. Therefore, Maricopa Medical Center's failure to follow the protocol it established is evidence of its negligence."

▮ This argument reveals the logical flaw in the Bells' proferred instruction. Medical negligence is the failure of a health care provider to act in accordance with the standard of care determined by the jury to be applicable in a given case. The jury cannot consider whether a medical malpractice defendant has acted negligently until it has determined the standard against which the defendant's conduct is to be measured. There is a difference between the evidence the jury considers in determining the standard and the standard itself. Only a deviation from the standard itself constitutes evidence of negligence. Consequently, the jury in the present case could not have found that the hospital's violation of its protocols constituted evidence of negligence unless it first found that the protocols were not merely evidence of the applicable standard, but were synonymous with it. Since the Bells' proferred instruction omits this prerequisite to a finding that violation of the protocols constitutes evidence of negligence, it is an incorrect statement of law. The trial court's refusal to give it was therefore proper. *Nichols v. Baker*, 101 Ariz. 151, 154, 416 P.2d 584, 587 (1966).

The Bells note that the trial court was aware of their willingness to modify the proposed instruction and that it nevertheless refused to give any instruction whatsoever on the protocols. They contend that this constituted reversible error because the weight to be given the protocols was central to their case.

In objecting to the trial court's refusal to give the requested instruction, the Bells' attorney made the following statement:

> "We had offered off the record in arguing instructions that we would like instructions on the protocol—*of the protocols that were adopted by the defendant as being evidence of the negligence, and the failure to live up to the appropriate standards of care by the defendant.* We stated an instruction to—*we were willing to modify it in any way that would state that basic concept.* We believe it's error for the Court not to give the instruction on the grounds that —and the case law, the standards which are akin to the safety rules of the hospital in this case, *should at least be evidence of this negligence* or malpractice." (Emphasis added).

We believe that this statement indicates that the Bells were willing to modify the proposed instruction in any way that would convey the "basic concept" that violation of the protocols constituted evidence of negligence. As we have explained, this concept is erroneous.

▮ However, even if the Bells had modified their instruction on the protocols so that it correctly stated the law, the trial court's refusal to give the instruction would not have constituted reversible error because a separate instruction on the protocols was not necessary in this case. The Bells maintain that the trial court was required to instruct the jury that it could consider the protocols evidence of the standard of care because this contention was crucial to their case. If a proper request is made, the trial court must instruct the jury

---

1. In most instances, the plaintiff must present expert medical testimony to establish these elements of his case. *Barrett v. Samaritan Health Services, Inc.*, 153 Ariz. 138, 141, 735 P.2d 460, 463 (App.1987); *Gurr v. Willcutt*, 146 Ariz. 575, 582, 707 P.2d 979, 986 (App.1985). Expert medical testimony is not required in cases where "the negligence is so grossly apparent that a layman would have no difficulty in recognizing it." *Riedisser v. Nelson*, 111 Ariz. 542, 544, 534 P.2d 1052, 1054 (1975).

on any legal theory which is within the issues of the case and which is supported by substantial evidence. *Gaston v. Hunter*, 121 Ariz. 33, 45, 588 P.2d 326, 338 (App.1978). It is not error for the trial court to refuse to give requested instructions when the concepts contained therein are adequately conveyed in other instructions. *Brierley v. Anaconda Company*, 111 Ariz. 8, 12, 522 P.2d 1085, 1089 (1974); *Rancho Pescado, Incorporated v. Northwestern Mutual Life Insurance Company*, 140 Ariz. 174, 188, 680 P.2d 1235, 1249 (App.1984). Moreover, the trial should not ordinarily single out a particular factual aspect of the litigation for special instructions because this may cause the jury to attach undue significance to it. *Spur Feeding Company v. Fernandez*, 106 Ariz. 143, 148, 472 P.2d 12, 17 (1970).

■ In the present case, there was conflicting testimony from several experts concerning the accepted standard of care in 1981 for controlling premature labor through the use of terbutaline. The trial judge gave several instructions that covered the issues of the standard of care and negligence. These instructions permitted the jury to consider all of the evidence—including the protocols—in determining the applicable standard of care. We therefore find that the trial court did not err by failing to give a separate instruction on the protocols.

Our disposition makes it unnecessary to determine other issues raised by the parties. We affirm the judgment and the denial of the motion for new trial.

FROEB, P.J., and EUBANK, J., concur.