NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

RICHARD SUDBERRY, individually and on behalf of all statutory
beneficiaries, *Plaintiff/Appellee*,

*v.*

CITY OF PHOENIX, a governmental entity, *Defendant/Appellant.*

No. 1 CA-CV 14-0175
FILED 4-2-2015

---

Appeal from the Superior Court in Maricopa County
No.  CV2009-050501
The Honorable Michael D. Gordon, Judge

**VACATED AND REMANDED**

---

COUNSEL

Carmichael & Powell, PC, Phoenix
By David J. Sandoval
*Counsel for Plaintiff/Appellee*

Iafrate & Associates, Phoenix
By Michele M. Iafrate
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Kenton D. Jones joined.

---

**K E S S L E R**, Judge:

¶1 Defendant/Appellant the City of Phoenix ("the City") appeals a jury verdict and judgment in favor of Plaintiff/Appellee Richard Sudberry ("Sudberry"), individually and on behalf of all statutory beneficiaries, in this action for the wrongful death of Sudberry's daughter, Kaitlyn. The City contends the trial court erred by refusing to allow the jury to allocate fault to certain non-parties. For the following reasons, we vacate the judgment and remand for further proceedings consistent with this decision.

## FACTUAL AND PROCEDURAL HISTORY

¶2 On January 28, 2008, Daniel Byrd ("Byrd") murdered his ex-girlfriend, seventeen-year-old Kaitlyn Sudberry, and then committed suicide. Byrd, who was also seventeen-years-old, had been subject to juvenile treatment and detention, juvenile intensive probation services, or standard probation for the preceding six years. In the days and weeks prior to the murder, Byrd twice assaulted Kaitlyn at school and his mother notified the Phoenix Police Department on January 22nd that Byrd had threatened to kill Kaitlyn and himself at school the following day. During this time, Byrd was also expelled from school, fired from his job, and failed a drug test. Despite knowing about these events and that Byrd was living alone without adult supervision, Byrd's Probation Officer, Cynthia Mancinelli ("Mancinelli"), did not attempt to contact him directly or assist the police in detaining him. Instead, she continued her efforts to reduce Byrd's probation supervision requirements and to have Byrd's twenty-four-year-old friend (who was himself on probation for drug charges) established as Byrd's legal guardian.

¶3 After Byrd's mother reported his threat to the police, Phoenix police officers attempted to contact Byrd, but could not find him at his home. The officers increased their presence at the school on January 23rd and 24th and notified Kaitlyn's family about the threat, advising them to obtain an order of protection and keep Kaitlyn home from school. Police

officers also told Mancinelli about the threat and asked her to violate Byrd's probation, but she refused, explaining that the Juvenile Probation Department pressured probation officers to not detain juveniles nearing eighteen years of age.[1]  Byrd murdered Kaitlyn while she was walking home from school on January 28th.

**¶4**　　　　　Sudberry filed this action for wrongful death, alleging that the Phoenix Police Department's negligence was a proximate cause of Kaitlyn's death. Sudberry also asserted that the State, through the acts and omissions of Child Protective Services and the Juvenile Probation Department, and Mancinelli were responsible for Kaitlyn's death and violated her civil rights.  Sudberry later stipulated to dismiss those claims with prejudice. The City then named the State, the Juvenile Probation Department, and Mancinelli as non-parties at fault.

**¶5**　　　　　At trial, the court granted Sudberry's motion for judgment as a matter of law and prohibited the City from asking the jury to allocate fault to the Juvenile Probation Department or Mancinelli.  The court ruled that the City was required, and failed, to present expert testimony regarding the standard of care applicable to Mancinelli.  The jury returned a $3 million verdict for Sudberry, allocating 40% fault to the City, 40% to Sudberry, 10% to Byrd, and 10% to Byrd's mother.

**¶6**　　　　　The City filed a renewed motion for judgment as a matter of law, a motion to alter or amend the judgment, and a motion for new trial, arguing that the court had misapplied the law and deprived the City of a fair trial by refusing to allow the jury to apportion fault to the Juvenile Probation Department or Mancinelli.  The court denied the motion and the City timely appealed that order and the underlying judgment.

**¶7**　　　　　We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003) and 12-2101(A)(1), (5)(a) (Supp. 2014).

---

[1] Some witnesses at trial used the terms "violate probation" and "revoke probation" interchangeably.  The evidence, however, showed these are slightly different concepts; a probation officer may notify the court of a probation violation and ask the court to issue a warrant for the probationer's arrest, and may also petition the court to revoke a juvenile's probation.

## ISSUES

**¶8** The City argues the court erred by granting Sudberry's motion for judgment as a matter of law and prohibiting the jury from allocating fault to the Juvenile Probation Department or Mancinelli.

## DISCUSSION

**¶9** We review de novo the trial court's ruling on a motion for judgment as a matter of law ("JMOL"). *Felder v. Physiotherapy Associates*, 215 Ariz. 154, 162, ¶ 36, 158 P.3d 877, 885 (App. 2007). The court should grant a motion for JMOL "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

**¶10** Because Arizona has abolished joint and several tort liability, a defendant is liable to an injured party only for his percentage of fault and may ask the trier of fact to apportion fault among all those who contributed to the injury, whether they were, or could have been, named as parties to the action. A.R.S. § 12–2506(A), (B), (F)(2) (2003). The defendant bears the burden of proving that the non-party was at fault and the trial court may only instruct a jury on assigning fault to a non-party if the evidence offered at trial is adequate to support a finding that the non-party was negligent. *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, 540, ¶ 83, 217 P.3d 1220, 1245 (App. 2009) (stating that defendant has the burden to prove a non-party is at fault); A.R.S. § 12-2506(B), (F)(2); *see also Czarnecki v. Volkswagen of Am.*, 172 Ariz. 408, 411, 837 P.2d 1143, 1146 (App. 1991) (stating a trial court should give a requested jury instruction if there is "any evidence tending to establish the theory posed in the instruction, . . . even if contradictory facts are presented").

**¶11** To prove that Mancinelli was comparatively at fault, the City was required to show that she breached a duty owed to Kaitlyn and that the breach caused Kaitlyn's injury. *Ocotillo W. Joint Venture v. Superior Court*, 173 Ariz. 486, 488, 844 P.2d 653, 655 (App. 1992) (defendant must show that the non-party owed a duty to the plaintiff, the duty was breached, and the breach caused injury to the plaintiff); *see also* A.R.S. § 12-

2506(F)(2). In this case, only one of these elements--whether Mancinelli breached her duty of care--is in dispute.[2]

**¶12** To prove Mancinelli breached the applicable standard of care, the City had the burden to establish what conduct the standard of care required and that Mancinelli's actions did not meet that standard. *Kreisman v. Thomas*, 12 Ariz. App. 215, 220, 469 P.2d 107, 112 (1970). "Ordinarily, the standard of care to be applied in a negligence action focuses on the conduct of a reasonably prudent person under the circumstances," *Sw. Auto Painting and Body Repair, Inc. v. Binsfeld*, 183 Ariz. 444, 448, 904 P.2d 1268, 1272 (App. 1995), and the jury may rely on its own experience in determining whether the defendant acted with reasonable care, *Bell v. Maricopa Med. Ctr.*, 157 Ariz. 192, 194, 755 P.2d 1180, 1182 (App. 1988). In actions concerning whether an individual negligently rendered services in the practice of a trade or profession, however, the applicable standard of care is that of the "skill and knowledge normally possessed by members of that trade or profession in good standing in similar communities." *Kreisman*, 12 Ariz. App. at 220, 469 P.2d at 112; *see also* Restatement (Second) of Torts § 299A (1965). In such cases, expert testimony is required to educate the jury regarding that standard. *St. Joseph's Hosp. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 315, 742 P.2d 808, 816 (1987) ("Where . . . the alleged lack of care occurred during the professional or business activity, the plaintiff must present expert testimony as to the care and competence prevalent in the business and profession."); *cf. Bell*, 157 Ariz. at 195 n.1, 755 P.2d at 1183 n.1 (stating that expert testimony "is not required in cases where the negligence is so grossly apparent that a layman would have no difficulty in recognizing it") (citation and internal quotation marks omitted).

**¶13** Here, we need not decide whether expert testimony was necessary to establish the applicable standard of care. Mancinelli testified that she had worked for the Maricopa County Juvenile Probation Department for fourteen years and was familiar with the duties required to perform her job as a juvenile probation officer. She testified that a juvenile probation officer monitors whether a juvenile on probation is complying

---

[2] We do not consider Sudberry's cursory assertion that a lack of causation evidence is an alternate basis to affirm the superior court's ruling. *See MT Builders, L.L.C. v. Fisher Roofing*, 219 Ariz. 297, 305 n.7, ¶ 19, 197 P.3d 758, 765 n.7 (App. 2008) (stating one-sentence reference to appellate argument in footnote without any analysis was insufficient to present argument and deeming it waived).

with the terms of probation set by the court and explained that the officer may notify the court if a juvenile probationer violates any probation terms and make an expedited request that the court issue a warrant for the juvenile's arrest. Critically, Mancinelli claimed that no policies governed when a juvenile probation officer should notify the court about a probation violation and asserted that decision was wholly within the officer's discretion. Based upon that testimony, a jury was entitled to evaluate whether Mancinelli acted reasonably in the exercise of her discretion or whether her acts amounted to gross negligence.[3]

¶14        The evidence showed that Mancinelli knew Byrd was living alone and had violated at least five of the twelve terms of his probation during the weeks prior to the murder, but chose not to notify the court about those violations, even though she admitted that a juvenile probation officer who discovers that a juvenile is not in the custody of an adult has an obligation to report that fact to Child Protective Services and the court. Further, even after the police informed Mancinelli of Byrd's threat against Kaitlyn and their attempts to locate him, she refused to advise the court of Byrd's probation violations or otherwise assist the police in detaining him. Indeed, she had indirect contact with Byrd (through his Big Brother program mentor, Mike Cassidy) on January 25th, but did not ask Cassidy for Byrd's location, tell him she needed to see Byrd, or tell him that the police were looking for Byrd.

¶15        Mancinelli defended her inaction by claiming that she did not believe that Byrd's mother's report of his threat against Kaitlyn was accurate and did not view Byrd as a threat to himself or others. However, Byrd's guardian ad litem, Lon Taubman, opined, based on his twenty-four years of experience as a guardian ad litem, that Byrd's probation violations in January 2008 indicated that he was in "serious trouble emotionally" and

---

[3] Because the parties do not dispute that the jury would have been required to find that Mancinelli was grossly negligent before it could attribute any fault to her, *see* A.R.S. § 12-820.02(A) (2003), we do not address the issue. *Cf.* A.R.S. §§ 12-2506(F)(2) (defining fault to be "an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all of its degrees . . . ."), -2506(B) (in assessing percentages of fault, the trier of fact shall consider the fault of all persons who contributed to the alleged injury "regardless of whether the person was, or could have been, named as a party.").

needed "very, very quick action to stop him from hurting somebody or himself." Taubman, a former prosecutor, also explained that the quickest action for Mancinelli to have taken in this case would have been a violation of probation petition, which would have allowed her to request a warrant for Byrd's arrest.

**¶16** Even if expert testimony was necessary to establish the standard of care, Mancinelli and Taubman's testimony satisfied that obligation. Given their testimony, the trial court erred by granting JMOL on the City's non-party at fault claim against the State, the Juvenile Probation Department, and Mancinelli.[4]

## CONCLUSION

**¶17** For the foregoing reasons, we reverse the trial court's ruling granting JMOL on the City's non-party at fault claim, vacate the judgment, and remand this matter for a new trial.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[4] Whether the verdict on damages and the allocation of fault must be set aside and retried on remand was not briefed by the parties, and our decision does not address those issues.